UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION OF MICHIGAN
SOUTHERN DIVISION

In Re:

ROBIN KRUTEL,

          Defendant.

_____/

KELLEY R. BROWN

          Plaintiff,

v.

ROBIN FROMILLE, f/k/a ROBIN KRUTEL

          Defendant.

_____/

Case No. 17-00047
Chapter 7
HON. JAMES W. BOYD

Adversary Proceeding No: 17-80052

| | |
|---|---|
| Nicholas S. Laue (P79260) | Michelle K. Burns (P77876) |
| KELLER & ALMASSIAN, PLC | MICHAEL M. MALINOWSKI PLC |
| Attorneys for Plaintiff | Attorneys for the Defendant and Defendant |
| 230 E. Fulton Street | 740 Alger Street SE |
| Grand Rapids, MI 49503 | Grand Rapids, Michigan 49507 |
| (616) 364-2100 | (616) 475-4994 |

---

## PLAINTIFF'S LEGAL MEMORANDUM

Plaintiff, Kelley R. Brown ("Plaintiff"), by and through his attorneys, Keller & Almassian,

PLC, pursuant to this Court's Final Pretrial Order and Trial Notice and for his Legal Memorandum

states as follows:

### I.    INTRODUCTION

Plaintiff respectfully requests that this Court find the debt owed to Plaintiff by Defendant,

Robin Fromille ("Defendant"), to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and

523(a)(4). At trial, Plaintiff will show by a preponderance of the evidence that (1) the Defendant

obtained money, property, or services through a material misrepresentation or false pretense when

she represented that Plaintiff would be placed on the title to the Home; (2) the Defendant  intended

1

to deceive Plaintiff as it admittedly was never her intention to add Plaintiff to the title of the Home; (3) Plaintiff justifiably relied on the false representations; and (4) Plaintiff's reliance on the representation was the result of his loss. Accordingly, Plaintiff respectfully requests that this Court find at trial that (1) Plaintiff has carried his burden as to each element of his 523(a)(2)(A) claim; and (2) award him a non-dischargeable judgment against the Defendant in the amount of $51,896.19.

Plaintiff also respectfully requests that this Court find the debt owed to Plaintiff be non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). At trial, Plaintiff will show by a preponderance of evidence that (1) the parties had a pre-existing fiduciary relationship pursuant to a joint venture agreement; (2) Defendant breached her fiduciary duty to Plaintiff; and (3) Plaintiff suffered a loss in the amount of $75,000.00 as a result of Defendant breaching her fiduciary duty. Accordingly, Plaintiff respectfully requests that this Court find that (1) Plaintiff has carried his burden as to each element of his 523(a)(4) claim; and (2) award him a judgment against the Defendant in the amount of $51,896.19.

Further, Plaintiff requests that this Court find that Defendant committed larceny when she stole Plaintiff's personal property, including his Jenn Aire Oven Stove, when she barred Plaintiff from retrieving the personal property before the Home was sold. Defendant took Plaintiff's property without his consent and converted it to her own use. In total, Defendant stole $2,500.00 in personal property from Defendant. Accordingly, Plaintiff respectfully requests that this Court find that (1) Plaintiff has carried his burden as to each element of his 523(a)(4) claim as it pertains to the personal property; and (2) award him a judgment against the Defendant in the amount of $2,500.00.

2

## II.    FACTS

Plaintiff and Defendant met at a Halloween part in the fall of 2010. At the time, Plaintiff was single and owned a home in Grand Rapids, Michigan. Plaintiff had one minor child who resided with him. At the same time, Defendant was married, but she was going through a divorce. Defendant had two minor children that lived with her. (**Exhibit 1 - Complaint, ¶¶ 7-12**).

Within two weeks of meeting each other, Plaintiff and Defendant started a romantic relationship, at which time Plaintiff and Defendant, along with their kids, moved into Defendant's home. Defendant's home was not a permanent home for the couple because the home was to be sold in a short amount of time pursuant to the Defendant's judgment of divorce. (**Exhibit 1 - Complaint, ¶¶ 14-16**).

As a result of Defendant's home being sold, Defendant decided jointly with Plaintiff that the two of them should purchase a house together. Plaintiff and Defendant started looking for a new residence that would accommodate their two families. (**Exhibit 1 - Complaint, ¶¶ 17-22**). Defendant represented that Plaintiff would be a joint owner of the home.  (**Exhibit 1 - Complaint, ¶¶ 23**)

In late 2011, Plaintiff and Defendant began house shopping for purpose of selecting a property. They utilized the broker services of Larry and Marilyn Menetti (collectively referred to as the "Menettis") in connection with the house search. The Menettis frequently addressed emails to "Kelley and Robin" during the course of the house searching and approval process. (See **Exhibit 2 – Communications between Mennettis**). In fact, Plaintiff frequently emailed the Menettis to set up times to view houses or vacant lots.

In the spring of 2012, Plaintiff and Defendant selected a vacant lot in the Stone Crest Development in Rockford, Michigan, and made a mutual decision to build a home at the site (the

"Home"). In connection therewith, Plaintiff initiated contact with Ada Mortgage and began the process of supplying financial information requested of the broker, Mr. Greg Salisbury, for both himself and Defendant in anticipation of their joint ownership and mortgage. Even the communications with Greg Salisbury referenced "Kelley and Robin." Frequently, Defendant was copied in on the emails. (**Exhibit 3 – Communications with Salisbury**).

While the closing of the property was underway, Plaintiff and Defendant made arrangements with the builder, Kurt Hamersma, constructing the Home to permit Plaintiff to participate in the construction in order to make certain additional improvements. These improvements included the installation of finished Brazilian teak hardwood flooring (approximately 950 sq/ft) , CAT5 and COAX wiring throughout the entire home and modifications for a wall mounted television and surround sound speakers (the "Pre-Closing Installations"). Defendant was actively engaged in making arrangements with the builder for Plaintiff's contributions. Communications relative to the Plaintiff/Defendant arrangements with the builder are attached hereto at **Exhibit 4 – Communications with Kurt Hamersma**. Additionally, Plaintiff directly participated in certain selections for the Home, including the color of the siding. (See **Exhibit 5 – Communications with Home Owners Association**.) The Pre-Closing Installations were made at Plaintiff's expense and installed prior to the closing in anticipation of his ownership. (See **Exhibit 6 – Plaintiffs Deposition Transcript, pp 48-52**).

In connection with their acquisition of the Home, the real estate agent involved in the transaction, Ms. Menetti, recommended to both Plaintiff and Defendant that they consider seeking an MCC Certificate for 1st time home buyers. (See **Exhibit 2 – Communications between Mennettis**). In connection therewith, the loan processing was transferred to a new lender recommended by Ms. Menetti, and Plaintiff continued to interface with the new lender in supplying the couple's financial information. **(Exhibit 7 – Scott DeWolf Communications)**. Unbeknownst to Plaintiff, Defendant and Ms. Menetti were working behind the scenes with the new lender to

4

arrange for the MCC Certificate. Because Plaintiff was not a first-time home buyer, he did not qualify for the MCC Certificate. Accordingly, Defendant, without informing Plaintiff, set up the loan to exclude his name from the final loan documentation. (See **Exhibit 6 – Plaintiffs Deposition Transcript, pp 45-47**).

When Plaintiff arrived at the closing, he was surprised to learn that he had been excluded from the loan and ownership documentation. It was then explained to him that it was necessary to exclude him so that the MCC Certificate for first-time home buyers could be issued to Defendant. The Chicago Title agents present at the closing represented that Defendant could be added to the title six (6) months later, and Defendant acknowledged that it was her plan to add Plaintiff to the title. (See **Exhibit 6 – Plaintiffs Deposition Transcript, pp 45-47**).

In reliance upon Defendant's representation and in connection with Defendant and Plaintiff's move into the Home, which was in August of 2012, Plaintiff interfaced with the Home Owner's Association ("Association") and paid all Association dues (**Exhibit 8 – Association Dues**), had homeowners insurance (USAA) placed in his name, and solely paid for the installation of gutters, one half of the irrigation expense, and provided a Jenn-Aire Oven for the Home, among other personal property (the "Post-Closing Installations"). (See **Exhibit 9**). In continuing reliance upon Defendant's representation, Plaintiff paid one-half of the mortgage and related carrying costs for the Home (an additional $12,000 over 18 months).

On social media, Defendant and Plaintiff held themselves out as co-owners of the Home. For example, when Defendant hosted a housewarming party on Facebook, it was entitled "Robin and Kelley's Housewarming Party." (**Exhibit 10 – Facebook Post**). Within the posting, it states, "Your [sic] are invited to celebrate Robin & Kelley's new home!" (**Exhibit 10 – Facebook Post**). Friends and family responding to the invite made comments consistent with the representation that

Plaintiff was a co-owner. (See **Exhibit 10**, "Robin and Kelley, so happy you are finally in your new home .... wishing you all the best together in your new home.").

After eighteen (18) months of living in the Home, Defendant abruptly barred Plaintiff from the Home and refused him reentry for purposes of recovering certain personal property within the Home, including but not limited to, Plaintiff's Jenn-Air Oven, Kegerator, Desk, Keurig Coffee Maker, Rug, Trampoline, Stove, and Gateway Computer located within the Home. Further, Defendant failed and refused to add Plaintiff's name to the title and mortgage of the Home and subsequently sold the Home to a new owner at a gain of $58,241.44. (**Exhibit 11 – Seller's Settlement Statement**). At the time of sale, the Home featured the improvements - Brazilian teak hardwood floors, gutters, underground sprinkling and landscaping, CAT5 and COAX wiring, Jenn-Aire Oven – all installed at Plaintiff's sole expense. In the listing for the Home (once again, handled by Ms. Menetti), the wood floors are held out as a prominent selling feature. (**Exhibit 12 – Zillow Listing**).

After Plaintiff was denied re-entry and did not receive his share of the profits from the subsequent Home sale, Plaintiff filed suit in the Kent County Circuit Court. In the suit, Defendant finally admitted her true intent all along: "[i]t was never my plan for Mr. Brown to be added to my home at any time." (**Exhibit 13 – Answer to Plaintiff's Complaint and Letter**). This statement is completely at odds with all of the representations, implied or expressed, during the search for the Home; the purchasing of the vacant lot, building the Home, making direct Home improvements, closing on the home, advertising the house warming party on social media, and the payments of the mortgage, home owners insurance, and Association dues. As a result of the representations, Plaintiff was damaged as follows:

| Seamless Gutters Installation | $230.00 |
|---|---|
| Wright Stump Grinding and Tree Removal | $250.00 |
| Half of the Underground Sprinklers | $1,530.11 |
| Grass Seed | $165.36 |
| Lawn | $300.00 |
| Wood Flooring | $5,800.00 |
| Mortgage Payments | $12,000.00 |
| Half of Money from Subsequent Sale | $29,120.72 |
| Stolen Jenn Aire Oven and Computer | $2,500.00 |
| TOTAL | $51,896.19 |

A copy of the invoices and sales documents are attached as **Exhibit 14**. Exhibit 14 does not include the amount of attorney fees to date. Before the Kent County Circuit Court reached a judgment, the Defendant filed for bankruptcy. This adversary proceeding was subsequently filed to determine that the debt owed to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).

## III.    LAW AND ANALYSIS

### a.  11 U.S.C. § 523(a)(2)(A)

In order to except a debt from discharge under § 523(a)(2)(A), Plaintiff must prove the following elements by a preponderance of the evidence: (1) the Defendant obtained money, property, or services through a material misrepresentation that, at the time, the Defendant knew was false or made with gross recklessness as to its truth; (2) the Defendant intended to deceive the creditor; (3) Plaintiff justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir., 1998), citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993). In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. See *Grogan v. Garner*, 498 U.S. 279, 291, 112 L. Ed. 2d 755, 111

7

S. Ct. 654 (1991). Further, exceptions to discharge are to be strictly construed against the plaintiff. See *Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988).

Plaintiff must prove that the Defendant engaged in conduct that was somewhat "blameworthy," and her fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn., 2003). Material misrepresentations, omissions (i.e. false pretense), and actual fraud all fall within the scope of § 523(a)(2)(A). *Id.* at 759; see also *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("Actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions."). False pretense involves implied misrepresentation or conduct intended to create and foster a false impression. *Copeland*, 291 B.R. at 760. "False representation", on the other hand, is an express misrepresentation. *Id.*. While actual fraud, "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another--something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Id.*

### i. Defendant obtained money, services, and products from Plaintiff by way of fraudulent misrepresentations and false pretense.

The Defendant, through a series of actions – both expressed and implied, created a false impression that Plaintiff was to jointly own the Home with Defendant. A "false pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression. A false pretense has been defined to include a "mute charade," where the Defendant's conduct is designed to convey an impression without oral representation. *Tweedie v. Hermoyian (In re Hermoyian)*, 466 B.R. 348, 377 (Bankr. E.D. Mich., 2012) (citations and quotations omitted). False pretense has been described as "usually, but not always, the product of multiple events, acts or representations undertaken by a Defendant which purposely create a contrived and misleading

8

understanding of a transaction . . . ." *Id.* A Defendant's silence may also "create a false impression which would be actionable under § 523(a)(2)(A) . . . ." *Id.*

In this case, Defendant, through a series of implied and expressed misrepresentations, represented to Plaintiff that he would be a co-owner of the Home. In fact, early in the buying/searching for a home process, Defendant represented to Plaintiff that "I want to be with you and share everything together as a family." (**Exhibit 15 – Email to Kelley**). However, it was never Defendant's intent to add Plaintiff to the title of the Home. Defendant has unequivocally admitted that "[i]t was never [her] plan for Mr. Brown to be added to [her] home at any time." (**Exhibit 13 – Answer to Plaintiff's Complaint and Letter**). The fraud was complete when she represented to Plaintiff that he was to be an owner of the Home. Defendant's actions leading from the purchase of the vacant lot to the building of the residential home and beyond create the representation that Plaintiff was to be a co-owner of the Home. Because of these representations, Plaintiff provided a considerable amount of funds for the building and maintaining of the Home and he provided property to be used within the Home. Plaintiff justifiably relied upon Defendants representations, and he has suffered a loss in the amount of $51,896.19 as a result. (See discussion *supra*).

Here, Plaintiff and Defendant's relationship started in 2010. Defendant and Plaintiff decided together in late 2010 to start searching for a new home after Defendant's divorce became final. Both engaged the Menettis and both submitted documentation for a mortgage. (See **Exhibit 2 – Communications between Mennettis;** and **Exhibit 3 – Communications with Salisbury**). After it was jointly decided to build a new home, Plaintiff and Defendant interfaced with the builder, Kurt Hamersma, to build the Home. (**Exhibit 4 – Communications with Kurt Hamersma**).

9

After the lot was selected, Plaintiff and Defendant interfaced and interacted with the builder in deciding certain aspects of the Home. Plaintiff, at his sole expense, paid for the Pre-Closing Installations, which included installation of finished Brazilian teak hardwood flooring (approximately 950 sq/ft) , CAT5 and COAX wiring throughout the entire home and modifications for a wall mounted television and surround sound speakers. (See **Exhibit 14**). Plaintiff made these financial contributions to the Home because Defendant had represented to him that he would be a co-owner of the Home. At no time, did Defendant object or otherwise indicate that Plaintiff would not be on the title to the Home or the mortgage. The Pre-Closing Installations were made at Plaintiff's expense and installed prior to the closing in anticipation of his ownership.

Unbeknownst to Plaintiff, Defendant and Ms. Menetti were working behind the scenes with the new lender to arrange for the MCC Certificate in her name only. Because Plaintiff was not a first-time home buyer, he did not qualify for the Certificate. Accordingly, Defendant, without informing Plaintiff, set up the loan to exclude his name from the final loan documentation. At closing, Plaintiff, for the first time, learned that he was not being added to the title or the mortgage. Nevertheless, Defendant **affirmatively represented** to Plaintiff that he would be added to the title after six months. Consistent with that representation and the representations that led up to closing, Plaintiff moved into the Home with Defendant. (See **Exhibit 6 – Plaintiffs Deposition Transcript, pp 45-47**).

After moving into the Home and consistent with the Defendant's representations, Defendant paid half of the mortgage, home owner's insurance, and Association dues. Defendant also made additional improvements and additions to the property, which included gutters, irrigation, and a contributed a Jenn Air Oven, among other personal property. Plaintiff provided these additional improvements at his sole expense and with the understanding that he would be added to the Home. (See **Exhibit 8, 9 14**).

10

After 18 months of living in the Home together, Defendant decided the relationship was over. She subsequently barred Defendant from entering the home and/or retrieving his belongings. Thereafter, the Defendant sold the home at a gain of $58,241.44. The Home included the Brazillian Teak floors, gutters, and irrigation. The Home was also sold with Defendant's Jenn Aire Oven. Despite the Defendant's representations, Plaintiff was never added to the title and Plaintiff did not share in the profit generated from the Home. Further, Plaintiff was not reimbursed for the installation of the Brazillian Teak floors, gutters or irrigation. Plaintiff also did not receive compensation for the Jenn Aire Oven or other personal property that he contributed to the Home.

In sum, Defendant, through a series of acts, represented that Plaintiff would be a co-owner of the Home. The Defendant knew these representations were false as "[i]t was never [her] plan for Mr. Brown to be added to [her] home at any time." (**Exhibit 13 – Answer to Plaintiff's Complaint and Letter**). The Defendant intended to deceive Plaintiff, and she was successful at doing so. The Plaintiff justifiably relied upon Defendant's misrepresentations. This is demonstrated by Defendant making the Pre-Closing and Post-Closing Installations, paying half the mortgage, home owner's insurance, and paying the Association dues. Plaintiff was damaged as a result of the misrepresentations. Plaintiff lost out on funds invested in the Pre-Closing and Post-Closing Installations; the appreciation of the Home at the time of sale; and he lost the use and enjoyment of his Jenn Aire Oven and personal property. As a result of the misrepresentations, Plaintiff has been damaged in the amount of $51,896.19. Accordingly, Plaintiff respectfully requests that this Court find at trial that (1) Plaintiff has carried his burden as to each element of his 523(a)(2)(A) claim; and (2) award him a judgment against the Defendant in the amount of $51,896.19 plus any further relief that this Court deem just under the circumstances.

    **b.   11 U.S.C. § 523(a)(4)**

11 U.S.C. § 523(a)(4) prohibits discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity." The required elements of proof under § 523(a)(4) are "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Bd of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir., 2007). The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *Id.* The defalcation provision applies only to express or technical trusts. *Id.*

> ### i. Defendant Breached Her Fiduciary Duty To Plaintiff Under The Joint Venture Agreement When She Subsequently Sold The Home For A Profit But Did Not Share The Profits With Plaintiff Or Reimburse Him For His Contributions to the Home.

Defendant breached the joint venture agreement, which gives rise to a non-dischargeable debt under 11 U.S.C. § 523(a)(4). To establish the existence of an express or technical trust for purposes of 11 U.S.C. § 523(a)(4), a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id.* In the Sixth Circuit, a statute may create the trust, if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing. *Id.* at 640. A joint venture under Michigan law imposes a fiduciary duty upon the members of the joint venture. *Schmude Oil Co v. Omar Operating Co*, 184 Mich. App. 574, 583; 458 N.W.2d 659 (1990) ("Joint venturers owe a fiduciary duty to each other."). To establish a joint venture under Michigan law, Plaintiff must show: (a) an agreement indicating an intention to undertake a joint venture; (b) a joint undertaking of; (c) a single project for profit; (d) a sharing of profits as well as losses; (e) contribution of skills or properties by the parties; and (f) community interest and control over the subject matter of the enterprise." *In re Kraus*, 37 B.R. 126, 129 (Bankr. E.D. Mich., 1984). *Miller v Livingston (In re Livingston)*, 28 F. Supp. 2d 623,

12

624 (D. Colo., 1998) (finding a 523(a)(4) non-dischargeable debt can be supported by a joint venture based on an oral agreement).

In this case, Plaintiff and Defendant entered into a joint venture to purchase and build a Home. As discussed *supra*, the parties invested substantial funds in the Home. In late 2011, Plaintiff and Defendant decided to pool their resources to purchase vacant land. Defendant provided the down payment for the vacant land, and Plaintiff supplied certain monies and labor to assist in the construction of the Home, referred herein as the Pre-Closing and Post-Closing Installations. (**Exhibit 6 – Plaintiffs Deposition Transcript, pp 48-52**).

After the Home was constructed, Plaintiff continued with the joint venture by supplying monies for the gutters, irrigation, and contributed personal property. Plaintiff further supplied money for half of the mortgage, home owners insurance, and Association dues. (**Exhibit 8 – Association Dues**; and **Exhibit 9**). Both parties worked together to find, construct, and build the Home for their respective families and relationship.

As members of a joint venture, the parties each owed a fiduciary duty to each other. See *Schmude Oil Co*, 184 Mich App at 583. Defendant breached her fiduciary duties to Plaintiff when she abruptly barred Plaintiff from access to the Home and subsequently sold the home for a profit, but failed to split the proceeds with Defendant. This was a direct violation and a breach of Defendant's fiduciary duties under the joint venture.

In sum, the joint venture supports the fiduciary relationship under 523(a)(4). The parties owed each other a fiduciary duty with respect to the joint venture – i.e. the investment in the Home. The Defendant breached that fiduciary duty when she intentionally barred Plaintiff from entering the Home to retrieve his personal property. She further breached the fiduciary duty when she sold the Home and failed to account to Plaintiff for the profit. Plaintiff suffered a loss as a result of

Defendant not accounting for the profits or compensating Plaintiff for his contributions in the amount of $51,896.19. (See discussion *supra*). Because Defendant breached her duties to Plaintiff, Plaintiff respectively requests that this Court enter a judgment finding the debt owed to Plaintiff is non-dischargeable pursuant to Section 523(a)(4). Accordingly, Plaintiff respectfully requests that this Court find that (1) Plaintiff has carried his burden as to each element of his 11 U.S.C. § 523(a)(4) claim; and (2) award him a judgment against the Defendant in the amount of $51,896.19 plus any further relief that this Court deem just under the circumstances.

### c. The Defendant stole Plaintiff's personal property when she refused to return the personal property to Plaintiff and barred him from re-entry of the Home to retrieve it.

Even if a fiduciary relationship has not been shown, as noted above, a debt can still be non-dischargeable under § 523(a)(4) if it is a debt for embezzlement or larceny. *Morganroth & Morganroth, PLLC v Stollman (In re Stollman)*, 404 BR 244, 271 (Bankr ED Mich, 2009), citing *Williams v. Noblit, (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005) (explaining that fiduciary capacity is not an element of embezzlement or larceny under § 523(a)(4)). "[L]arceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner." *Rowe Oil, Inc. v. McCoy (In re McCoy)*, 189 B.R. 129, 135 (Bankr. N.D. Ohio 1995) (citation omitted). Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner. *Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993).

As discussed *supra*, Plaintiff provided a Jenn Aire Oven, among other personal property, for the Home. The Oven and personal property was provided to the Home on the premises that Plaintiff would jointly own the Home with Defendant. Plaintiff was subsequently barred from

14

entering the Home and retrieving the personal property. On May 2, 2014, Plaintiff texted Defendant and stated:

| Plaintiff: | I am getting all of my possessions . . . you kicked me out. |
| Defendant: | You bought [the stove] for the house. You do not have any where to put it. |
| Plaintiff: | It is mine and I want all my stuff. |
| Defendant | You didn't pay $2,000.00 for that!! You do not care about us at all . . . all you care about is money |
| Plaintiff: | That's a $2,000.00 Stove I'm not giving my stuff away. |
| Defendant: | Wow. . . you would really do that!!?? So, I cannot make food for the kids!!. **[Exhibit 16 – Text Messages and Communications.]** |

Thereafter, Defendant sold the Home with the Jenn Aire Oven still installed. By selling the Home, Defendant took the Jenn Aire Oven with the intent to convert the property to her own use. She profited from the Jenn Aire Oven as the oven was sold with the Home. Defendant committed larceny when she refused to return the Jenn Aire Oven to Plaintiff and subsequently sold the oven with the Home. In addition to the oven, Defendant also stole the following personal property Kegerator, Desk, Keurig Coffee Maker, Rug, Trampoline, Stove, and Gateway Computer. (See **Exhibit 16**). Plaintiff has never received or been compensated for these items. In total, Defendant stole approximately $2,5000 in personal property from Plaintiff. Accordingly, Plaintiff respectfully requests that this Court find a non-dischargeable debt in the amount of $2,500.00 under 11 U.S.C. § 524(a)(4) and any further relief that this Court deems necessary under the circumstances.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that this Court find the debt owed to him by Defendant to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4) and award him a judgment in the amount of $51,896.19 and such further relief as this Court deems necessary under the circumstances.

Respectfully submitted,

July 23, 2019

/s/ Nicholas S. Laue
Nicholas S. Laue (P79260)
KELLER & ALMASSIAN, PLC
Attorneys for Plaintiff
230 E. Fulton Street
Grand Rapids, MI 49503
(616) 364-2100

Exhibit 1

UNITED STATES BANKRUPTCY COURT
WESTERN DIVISION OF MICHIGAN
SOUTHERN DIVISION

In Re:                                          Case No.  17-00047

ROBIN L. KRUTEL,                                Chapter 7

      Debtor.                                   HON. JAMES W. BOYD

_____/

KELLEY R. BROWN                                 Adversary Proceeding No: 17-80052

      Plaintiff,

V

ROBIN FROMILLE, f/k/a
ROBIN L. KRUTEL,
also f/k/a ROBIN THOMAS-KRUTEL,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

The Plaintiff, Kelley R. Brown, by and through his attorney Martin L. Rogalski of Martin L.

Rogalski, P.C., complains against the Defendant, Robin Fromille, f/k/a Robin L. Krutel, also f/k/a

Robin Thomas-Krutel, as follows:

## GENERAL ALLEGATIONS

1. This Court has jurisdiction over this case, an Adversary Proceeding, pursuant to

   28 U.S.C. §1334, 28 U.S.C. §157 and Local Rule 83.2 of the United States District

   Court for the Western District of Michigan.

2. Venue exists pursuant to 28 U.S.C. §1409.

3. This Adversary Proceeding constitutes a "core proceeding" as defined in 28 U.S.C.

   §157(b).

4. On January 5, 2017, the Defendant as Debtor, filed a Voluntary Petition for relief

   under Chapter 7 of Title 11 of the United States Bankruptcy Code.

1

5. The Plaintiff, Kelley R. Brown, is an individual residing at 3144 Juniper Ct. NE, Grand Rapids, MI 49505.

6. The Defendant, Robin Fromille, f/k/a Robin L. Krutel, also f/k/a Robin Thomas-Krutel, is an individual residing at 7153 Cuesta Way Drive NE, Rockford, MI 49341.

<div align="center">

**COUNT I – FRAUD**
**(11 U.S.C. § 523(a)(2)(A)**

</div>

7. Plaintiff met Defendant at a Halloween Party in the fall of 2011.

8. At that time, Plaintiff was single and unattached to any woman.

9. Plaintiff owned his own home in Wyoming, Michigan.

10. Plaintiff had one minor child residing with him.

11. At that time, Defendant was married but going through divorce proceedings to end her marriage.

12. Defendant was residing in her marital home with her two minor children,

13. Defendant had knowledge that she would not be able to afford to retain the marital home as part of the property settlement of her pending divorce.

14. Within two weeks of meeting each other Plaintiff and Defendant became physically intimate with each other and started a romantic relationship.

15. Subsequently, Plaintiff and Defendant were residing together, with the children they each had, at Defendant's marital home.

16. The Judgment of Divorce between Defendant and her former husband required the marital home to be sold within a short time frame.

17. Discussions occurred between Plaintiff and Defendant concerning where Defendant was to live, because of Defendant's inability to remain long term at Defendant's marital residence.

18. Plaintiff offered to have Defendant live with him at his Wyoming, Michigan residence, but Defendant declined the offer for various reasons.

19. One of the various reasons was that Plaintiff had a roommate residing with him in his Wyoming, Michigan residence.

20. As the deadline for Defendant to leave her marital residence grew closer, Defendant appeared to become fearful as to where she was going to live, because she had no designated place to move.

21. It was at this time that the Defendant decided to take advantage of the Plaintiff and the intimate relationship which Defendant had created with Plaintiff.

22. Defendant suggested to Plaintiff that the two of them purchase a house together and reside in it together.

23. Defendant represented to Plaintiff that is was her intention that the house would be jointly owned by the two of them.

24. Defendant also represented to Plaintiff that it was her intention that they would soon marry and would create a blended family in their jointly owned home.

25. Such representations as to Defendant's intentions to own a house jointly with the Plaintiff and that the Defendant would soon marry the Plaintiff were false.

26. Defendant knew the representations of her intentions to Plaintiff were false when she made them.

27. Plaintiff relied upon Defendant's representations and acted in accordance with them to his detriment.

28. Plaintiff suffered damages due to the loss of money and property expended to obtain a house in which both Plaintiff and Defendant and the children would live, as described in the Complaint.

29. Plaintiff lost money, as the seventy-two thousand dollar ($72,000.00) profit made when house located in Rockford, Michigan (the Stone Crest Home) was sold.

30. Said damages incurred by the Plaintiff were directly and proximately caused by the Plaintiff's reliance upon the misrepresentations of Defendants intent.

31. In late 2011 the parties began house shopping together for the purpose of selecting a property for joint ownership and investment.

32. The parties' utilized the broker services of Larry and Marilyn Menetti in connection with their house shopping.

33. Communications between the Menettis were jointly addressed to Mr. Brown and Ms. Thomas, relative to the parties' house shopping efforts (**Exhibit A**).

34. In late 2011 or early 2012 Defendant told Plaintiff that none of the pre-existing houses which they looked at were acceptable to her as a residence.

35. In the spring of 2012 Plaintiff and Defendant viewed and selected a vacant lot in Stone Crest Development with the address of 9445 Crest Circle Drive NE, Rockford, MI 49341, and parties made a mutual decision to build a home at the site (the "Stone Crest Home") [Lot No. 17].

36. At the time that Lot No. 17 was selected Defendant made the statement to Plaintiff, "Let us build this together."

37. Defendant then entered into a relationship with a realtor to purchase Lot No.17, upon which to custom build the house for Defendant.

38. The contract to retain a realtor, formally known as on "Exclusive Buyer Agency Contract", dated March 12, 2012, was signed only by Defendant and the realtor.

39. Defendant did not offer Plaintiff an opportunity to sign the contract with the realtor.

40. The realtors used by Defendant were Larry and Marilyn Mennetti.

41. The Defendant had known the Mennettis for many years and had previously used their realtor services.

42. Defendant did not disclose to the Plaintiff the existence of the realtor contract.

43. Defendant never disclosed to Plaintiff that the contract to retain a realtor had been individually signed.

44. In connection with the mutual decision, Plaintiff initiated contact with Ada Mortgage and began the process of providing financial information requested of the broker for both himself and Defendant.

45. Communications took place relative to the joint mortgage application (**Exhibit B**).

46. Defendant had knowledge that Plaintiff was pursuing financing for Lot No. 17 and financing for the construction of the house.

47. Defendant did not take action of any kind to prevent Plaintiff's pursuit of financing, further misleading Plaintiff as to her intentions.

48. Defendant did not have any intention of using any financing which Plaintiff might obtain.

49. Plaintiff was present with the Defendant when the houses were reviewed for possible purchase.

50. Plaintiff was present with Defendant when Defendant viewed Lot No. 17, which Defendant eventually purchased individually on April 18, 2012.

51. Defendant's true intention was to knowingly mislead Plaintiff and utilize his financial resources to obtain a house which Plaintiff was to separately finance and purchase.

52. Defendant intended to lead Plaintiff on into thinking that all of the money he would expend on the house would be for a house which they both would own together.

53. Defendant was so skillful in hiding her true intentions from Plaintiff that Plaintiff believed it was necessary for him to attend the closing at the title company, at which Defendant took sole ownership of the real property upon which the newly constructed house had been built.

54. While preparations for a closing were made, Plaintiff made arrangements with the builder (the home was under construction) and scheduled direct improvements to the home that would increase its appraised value including, but not limited to, the installation of finished Brazilian teak hardwood flooring (approximately 950 sq/ft) and

CAT5 and COAX wiring throughout the entire home and modifications for a wall mounted television and surround speakers (the "Pre-Closing Installations").

55. The Pre-Closing Installations were made at Plaintiff's sole expense and installed prior to the closing in anticipation of his ownership.

56. While the Pre-Closing Installations were underway, the real estate agent involved in the transaction recommended to Defendant and Plaintiff that they seek an MCC Certificate for first time home buyers, and in connection therewith, the loan processing was transferred to a new lender. Plaintiff continued to interface with the new lender in supplying the couple's financial information.

57. Unknown to Plaintiff, the Defendant and the realtors, Larry and Marilyn Menetti, were working behind the scenes with the new lender to arrange for the MCC Certificate solely in the Defendant's name, as well as financing and ownership of the home solely in Defendant's name.

58. The Buy-Sell Agreement was signed solely by the Defendant, which was not disclosed to Plaintiff.

59. Because Plaintiff was not a first time home buyer, Plaintiff did not qualify for the certificate.

60. The Defendant, without informing Plaintiff, set up the mortgage loan to exclude the Plaintiff's name from the final loan documentation as well as ownership of the new residence.

61. A MCC Certificate provides housing assistance by issuing a federal tax credit to a first time home buyer.

62. Qualified home buyers can obtain a credit of 20% of their annual mortgage interest paid against their year end tax liability. A tax credit is a dollar for dollar reduction in tax liability.

6

63. The MCC tax credit is allowable every year for the life of the original mortgage (up to thirty years).

64. The MCC Certificate could have saved the parties approximately $80,000.00 over the life of the thirty year mortgage in income taxes.

65. When Plaintiff arrived at the closing, he was surprised to learn that he had been excluded from the loan and ownership documentation, because of the fact that he had a current mortgage that would have disqualified the pair from the issuance of this MCC Certificate.

66. The Chicago Title agents, present at the closing, assured Plaintiff that he could be added to the title six (6) months later and Defendant acknowledged that it was her plan to add Plaintiff to the title at that time.

67. In reliance upon Defendant's representations and in connection with the parties' move into the Stone Crest Home, Plaintiff interfaced with the Association and paid all Association dues, had homeowners insurance (USAA) placed in his name, and solely paid for the installation of gutters, yard and landscaping (the Post-Closing Installation).

68. In continuing reliance upon Defendant's representation, Plaintiff paid one-half of the mortgage and related carrying costs for the Stone Crest Home, an additional $12,000.00 over eighteen (18) months.

69. The Plaintiff and Defendant held themselves out to their friends and family as co-owners of the property.

70. When Defendant announced a housewarming party on Facebook, the announcement was entitled: "Robin and Kelley's Housewarming Party".

71. Friends responding to the Facebook invitation made comments consistent with the representation that Plaintiff was a co-owner. One such comment was: "Robin and

Kelley, so happy you are finally in your new home .... Wishing you all the best together in your new home."

72. After approximately eighteen (18) months of joint possession of the Stone Crest Home, Defendant abruptly barred Plaintiff from the Stone Crest Home and refused him re-entry for the recovery of certain personal property within the Home, including, but not limited to, Plaintiff's Jenn-Air oven and personal computer located within the Home ("the Converted Personal Property").

73. Defendant failed and refused to honor her promise and representation to add Plaintiff's name to the title of the Stone Crest Home and has since sold the Stone Crest Home to a new owner at a gain of $72,000.00.

74. Despite repeated attempts to recover the Converted Personal Property, Defendant has failed and refused to return the same.

75. Plaintiff made the Pre-Closing Installations to the Stone Crest Home in anticipation of becoming an owner of the same at the closing.

76. Plaintiff made the Post-Closing Installations to the Stone Crest Home in reasonable reliance upon Defendant's representation that his name would be added to the title post-closing.

77. Defendant made both the Pre-Closing and Post-Closing Installations with the expectation of receiving the benefit of those Installations through transfer of an ownership interest in the Home.

78. Neither the Pre-Closing nor Post-Closing Installations were gratuitous, and Defendant accepted the benefit of those Installations with full knowledge of Plaintiff's ownership expectations.

79. Defendant has now benefitted from the Installations in connection with the realization of additional value upon the sale and transfer of the Stone Crest Home.

8

80. All actions taken by Plaintiff in reliance upon Defendant's representations were reasonable. The reliance was to Plaintiff's detriment and he suffered damages accordingly which were direct and proximately caused by Defendant's representations which were fraudulent.

81. The value added to the Stone Crest Home by Plaintiff's Installations total approximately $23,000.00.

82. Defendant's conversion of Plaintiff's personal property to her own use renders Defendant liable under MCLA 600.2919a for three times the value of the Converted Personal Property, plus Plaintiff's reasonable attorney's fees incurred in connection with this claim.

83. The value of the Converted Personal Property is approximately $2,500.

84. Damages are:

    a.   $23,000.00 as to the value of the improvements.

    b.   $ 7,500.00 treble damages on the converted personal property.

    c.   $ 8,500.00 attorney fees, at present.

    d.   $36,000.00 one-half of gain made on sale of property.

    e.   Any additional damages as discovery may disclose.

    TOTAL:  $75,000.00

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter a money Judgment against the Defendant and in Plaintiff's favor for the value of the Pre-Closing Installations, the Post-Closing Installations;

2. Treble the value of the Converted Personal Property and;

3. Further award Plaintiff costs and reasonable attorney fees incurred in connection with this action in accordance with MCLA 600.2919a;

4. Award Plaintiff for the loss of the gain made in the sale of the real property;

5. Determine that the amount of the Judgment of $75,000.00 is not dischargeable pursuant to 11 USC §522(a)(2).

## COUNT II
## 11 USC §522(a)(4)

Plaintiff incorporates by reference Plaintiff's 1-44 as if fully restated in this paragraph.

85. Plaintiff and Defendant decided to pool their resources and become partners in their efforts to find a residence which they could own jointly.

86. It was the intention of both parties to work together for their mutual benefit in acquiring and maintaining the joint residence.

87. As partners, the Defendant was a fiduciary as to the Plaintiff.

88. Both parties acquired the location for their new residence and agreed on the type of house to be built.

89. Plaintiff expended substantial sums on the purchase and improvement of the new residence.

90. Defendant breached her duty to Plaintiff in many ways, including but not limited to the following actions:

   a. By securing the title to the residence solely in her name;

   b. By misrepresenting her intent at the closing to place Plaintiff's name on the title with hers;

   c. By failing to disclose her plans to individually own and finance the real property;

   d. Barring Plaintiff from possession of the residence;

   e. By not accounting to Plaintiff at the time of the sale of the real property to a third party.

   f. By not paying over to the Plaintiff his share of the net equity resulting from the liquidation of the principal partnership asset, the residence;

10

g.  By not crediting Plaintiff's capital account for the partners the amount of
money in the principal asset of the partnership, the newly built residence.

36. Plaintiff was damaged as a direct proximate result of Defendant's breach of her
fiduciary duty.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Enter a money Judgment against the Defendant and in Plaintiff's favor for the
value of the Pre-Closing Installations, the Post-Closing Installations;

2.  Treble the value of the Converted Personal Property and;

3.  Further award Plaintiff costs and reasonable attorney fees incurred in
connection with this action in accordance with MCLA 600.2919a;

4.  Award Plaintiff for the loss of the gain made in the sale of the real property;

5.  Determine that the amount of the Judgment of $75,000.00 is not
dischargeable pursuant to 11 USC §522(a)(4).


Respectfully submitted,

Dated: August 31, 2018_____ _____      By: /s/ Martin L. Rogalski_____
Martin L. Rogalski (P30548)
MARTIN L. ROGALSKI, P.C.
1881 Georgetown Center Drive
Jenison, Michigan  49428
(616) 457-4410

# EXHIBIT A

KB

| | |
|---|---|
| From: | Larry & Marilyn [larryandmarilyn@grar.com] |
| Sent: | Friday, March 09, 2012 10:25 AM |
| To: | kelleybrown1@comcast.net; Robin Thomas |
| Subject: | Re: HOME SWEET HOME |

Kelley and Robin

I did not schedule other appointments this afternoon because I had it booked for you guys. I am at a disadvantage here. Until I know what you can buy – and the $200,000 range is not on the table now until there is some determination on your house on 36th St. Even if you buy 5% down conventional because of the PMI you are not there. Until I have a number I do not know what to schedule. I agree 4 houses would be great but which 4. Three of the homes Robin sent are about $200,000 or over. One is $154,000. I don't know what you can buy. I know you need to buy NOW. When I actually get the information I need – the amount you can qualify for in writing – I can and will clear my schedule for you. We will find you a home that you can purchase. A seller won't even look at an offer until I send that piece of paper with it.

I left a message for Greg this morning and hopefully I will hear something soon. The issue is I need to schedule appointments. That means calling a listing agent, having them talk to the seller and make arrangements. If there is a pet in the home the owner needs to make arrangements. I have been asking all week for the information I needed to do this. When I call to schedule and appointment the first thing I am asked is if my buyer is approved. I am asked how they would buy and what the time frame is. I need those answers. I can sometimes schedule a vacant home quickly but that depends how quickly I can reach the listing agent. Usually scheduling showings takes 24 hours or more. Looking at homes you can't buy does not get you to the finish line faster. I know Robin can't look Saturday or Sunday. You are not available either. We can look most evenings because we have daylight until almost 7:00 now. I know this is hard but I don't have the information I need to work with. Usually when a buyer is looking to buy they sit down face to face with a mortgage lender for an appointment that can last over an hour. You bring all the docs they ask for to the meeting and fill out a formal application. The loan officer discusses with you all of the various options and what will or will not work. After you leave the information is processed and within a couple days the end product – an approval letter is issued. This is being put together in pieces and you still (at least I don't think so) have not sat down face to face with Greg. This has resulted in a lot of missed information and confusion and taken MUCH longer that it should have. I will do everything I can to get this done for you.

I am not doing my job for you if I have you write an offer, invest your hard earned money into inspections, get the kids excited, waste your time when you find out 30 days from now you can't close on the house you bought (or tried to buy). I talked to another lender I have worked with in the past yesterday about FHA possibilities. She told me you guys would have to qualify for BOTH mortgages (36th St and the new home) and they will not allow rent as income. This is not easy. I also wondered if Robin could do RD by herself and and MCC certificate and qualify in the $150 to $160 range.  Until the issue of the 36th St house is resolved we have a problem. If we need to go this route Robin will need to go to another lender because Greg does not participate in the MCC program.

Keep me posted with what is happening and I will wait for Greg's call here.



Marilyn

**From:** kelleybrown1@comcast.net
**Sent:** Friday, March 09, 2012 7:41 AM
**To:** larryandmariland
**Subject:** HOME SWEET HOME

Marilyn-

Robin and I need to look at houses regardless of Greg / Mortgage because we have all of us today to look at them since it is a half day for kids....

4 houses to look at would be great!

Greg is working on our paperwork 1st thing this morning and we just have a few more things to get him.

_____

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.1913 / Virus Database: 2114/4858 - Release Date: 03/08/12

# EXHIBIT B

XFINITY Connect

http://web.mail.comcast.net/zimbra/h/printmessage?id=332266&t... America New York...

XFINITY Connect

kelleybrown1@comcast.net
Font Size

Re: New home purchase details

From : kelleybrown1@comcast.net                                    Wed, Mar 07, 2012 10:06 PM
Subject : Re: New home purchase details                             4 attachments
    To : gsalisbury@adamortgage.com

Greg, I did send you a lot of these docs already so lets try not to duplicate what was already sent...
we sent our licenses in for sure and my tax info...here are my navy W2s...and retirement stuff

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

**From:** "Greg Salisbury" <gsalisbury@adamortgage.com>
**To:** kelleybrown1@comcast.net, fromille@yahoo.com
**Cc:** larryandmarilyn@grar.com                    ⟶  ROBIN THOMAS (FROMILLE)
**Sent:** Wednesday, March 7, 2012 6:36:00 PM
**Subject:** New home purchase details

Kelley & Robin,
Please call me as soon as possible to discuss your mortgage options.
If we try to use the USDA Rural Housing Admin loan with $0 down and NO mortgage insurance we must demonstrate that your home on 36th St. is too small for you two and the 3 kids. Marilyn said it's a tri-level and the way those are dealt with for square footage on the appraisal could be a benefit to your situation. If you can find the most recent appraisal done on that home, please email it to me. I also understand that your last mortgage was done in 2007 and is an adjustable. Please also send me a recent mortgage statement. If it is adjustable, I know the rates have dropped over the last few years. You might want to look at locking the rate on a fixed depending on how long you plan to keep the house. I'll help you write the letter to USDA and the mortgage underwriter but we also need to fill in some holes on your Loan Application.
We don't need any originals so either scan and email or fax the following:
- 2 most recent pay stubs for Robin
- 2010 & 2011 W-2s
- 2009 & 2010 federal tax returns for Kelley (all pages) If you have filed 2011, send those and not 2009.
- Navy Reserve pay stubs if you get them
- 2010 & 2011 W-2s for Navy
- home owner's insurance for 36th St home

1 of 2                                                                      8/13/2014 10:58 AM

XFINITY Connect                                                    kelleybrown1@comcast.net
                                                                   Font Size

**Fwd: House to See -- Kelley & Robin**

From : kelleybrown1@comcast.net   ME                              Mon, Mar 05, 2012 08:01 AM
Subject : Fwd: House to See -- Kelley & Robin
To : Greg Salisbury <gsalisbury@adamortgage.com>        ADA  MORTGAGE

Greg, Do you do these MCC certificates ???

Thanks-


Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123


From: "Larry & Marilyn" <larryandmarilyn@grar.com>   REALTORS
To: kelleybrown1@comcast.net
Sent: Sunday, March 4, 2012 7:55:11 PM              → ME
Subject: Re: House to See -- Kelley & Robin

Yes, you can. I will pull those and do some more searching and see what else comes up. What are you guys going to do about the mortgage? Are you going to call Exchange and do the MCC certificate to save some money? Let me know

Marilyn

From: kelleybrown1@comcast.net
Sent: Sunday, March 01, 2012 7:41 PM
To: larryandmarilyn@grar.com
Subject: House to See -- Kelley & Robin

Can we see some houses Friday at 2:00 pm ??

We drove by white fawn house... cute woody setting and neighborhood...

8710 White Fawn http://realestate.mlive.com/?classification=real+estate&temp_type=detail&tp=PF_mlive&
property=mlive.com&finder=buy&ad_id=585710490

XFINITY Connect

http://web.mail.comcast.net/zimbra/h/printmessage?id=...

**XFINITY Connect**

kelleybrown1@comcast.net
Font Size

HOME SWEET HOME

From : kelleybrown1@comcast.net
Subject : HOME SWEET HOME                                          Fri, Mar 09, 2012 07:41 AM
To : larryandmariland <larryandmarilyn@grar.com>
Bcc : Robin Fromille <fromille@yahoo.com>

*ME*
*TO* *REALTORS*
*ROBIN*
→ *AOA MORTGAGE*

Marilyn -

Robin and I need to look at homes regardless of Greg / Mortgage because we have all of us today to look at them since it is a half day for kids....

4 houses to look at would be great!

Greg is working on our paperwork to thru this morning and we just have a few more things to get him.

Kelley Brown
kelleybrown1@comcast.net
(616) 706 6123

1 of 1

- driver's licenses
- recent retirement statement (all pages)
- 2 most recent bank statements (all pages)
- recent mortgage statement for 36th St home
- divorce decree (all pages)

I will be able to determine exactly how much house you can afford and the best available program for you once I have these.

Thanks,
Greg Salisbury
Branch Manager
616-258-9662
Toll Free: 888-826-7147
Fax: 877-567-3536
Email: gsalisbury@adamortgage.com

CONFIDENTIALITY AND PRIVILEGE NOTICE
This electronic mail transmission and any attachment may contain confidential, proprietary, and/or legally privileged personal information, as that term is defined in the Gramm-Leach-Bliley Act (collectively, Confidential Information), intended for the named recipient(s) only. Any review, use, disclosure, distribution, copying or other action regarding the information contained in this transmission and any attachment by an unnamed recipient is legally prohibited. If you are not a named recipient, immediately call me at 888-835-7147 or send a reply email and then delete and purge this transmission and any attachment from your computer system. Thank you.

AMERIPRISE January 2012_Statement.pdf — KELLY BROWN (RETIREMENT INFO)
60 KB
20111231_2011_mutual_fund_annual_statement_roth_ira_6977.pdf — "          "
178 KB
navy2010.pdf    W2 — NAVY
29 KB
NAVY 2011.pdf    W2 — NAVY
39 KB

XFINITY Connect                                                kelleybrown1@comcast.net

- Font Size

KELLEY BROWN DOCS My Tax Form

From : kelleybrown1@comcast.net                          Sun, Feb 26, 2012 09:12 PM

Subject : KELLEY BROWN DOCS My Tax Form                       1 attachment

     To : Greg Salisbury <gsalisbury@ademortgage.com >

I have attached my final tax form.
FYI: It may be lengthy...
Perhaps you could tell me about how much home we can buy so we can keep a good lookout...
We both make a combined 63K.

Thanks-

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

Kelley R Brown 2011 Tax Return.pdf
2 MB

XFINITY Connect

kelleybrown1@comcast.net
Font Size

Re: New home purchase details

From : kelleybrown1@comcast.net                           Wed, Mar 07, 2012 10:06 PM

Subject : Re: New home purchase details                           4 attachments

   To : gsalisbury@adamortgage.com

Greg, I did send you a lot of these docs already so lets try not to duplicate what was already sent...
we sent our licenses in for sure and my tax info...here are my navy w-2s...and retirement stuff...

---

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

---

From: "Greg Salisbury" <gsalisbury@adamortgage.com>
To: kelleybrown1@comcast.net, fromille@yahoo.com
Cc: larryandmarilyn@grar.com
Sent: Wednesday, March 7, 2012 6:36:00 PM
Subject: New home purchase details

Kelley & Robin,
Please call me as soon as possible to discuss your mortgage options.
If we try to use the USDA Rural Housing Admin loan with $0 down and NO mortgage insurance we must
demonstrate that your home on 36th St. is too small for you two and the 3 kids. Marilyn said it's a tri-level
and the way those are dealt with for square footage on the appraisal could be a benefit to your situation. If
you can find the most recent appraisal done on that home, please email it to me. I also understand that
your last mortgage was done in 2007 and is an adjustable. Please also send me a recent mortgage
statement. If it is adjustable, I know the rates have dropped over the last few years. You might want to
look at locking the rate on a fixed depending on how long you plan to keep the house.
I'll help you write the letter to USDA and the mortgage underwriter but we also need to fill in some holes
on your Loan Application.
We don't need any originals so either scan and email or fax the following:
- 2 most recent pay stubs for Robin
- 2010 & 2011 W-2s
- 2009 & 2010 federal tax returns for Kelley (all pages) if you have filed 2011 send those and not 2009.
- Navy Reserve pay stubs if you get them
- 2010 & 2011 W-2s for Navy
- home owner's insurance for 36th St home
- driver's licenses
- recent retirement statement (all pages)
- 2 most recent bank statements (all pages)
- recent mortgage statement for 36th St home
- divorce decree (all pages)
I will be able to determine exactly how much house you can afford and the best available program for you
once I have these.
Thanks,
Greg Salisbury
Branch Manager
616-288-0960
Toll Free: 888-826-7117

Exhibit 2

XFINITY Connect                                                    http://web.mail.comcast.net/zimbra/h/printmessage?id=531122&tz=America/New_York&xim-

**XFINITY Connect**                                                                                    kelleybrown1@comcast.net
                                                                                                       + Font Size -

**Fwd: House to See -- Kelley & Robin**

> **From :** kelleybrown1@comcast.net    *ME*                                        Mon, Mar 05, 2012 08:01 AM
> **Subject :** Fwd: House to See -- Kelley & Robin
> **To :** Greg Salisbury <gsalisbury@adamortgage.com>    *ADA MORTGAGE*
>
> Greg, Do you do these MCC certificates???
>
> Thanks-
>
> _____
>
> Kelley Brown
> kelleybrown1@comcast.net
> (616) 706-6123

---

**From:** "Larry & Marilyn" <larryandmarilyn@grar.com>    *REALTORS*
**To:** kelleybrown1@comcast.net                              → *ME*
**Sent:** Sunday, March 4, 2012 7:55:11 PM
**Subject:** Re: House to See -- Kelley & Robin

Yes you can. I will pull these and do some more searching and see what else comes up. What are you guys going to do about the mortgage? Are you going to call Exchange and do the MCC certificate to save some money? Let me know

Marilyn

**From:** kelleybrown1@comcast.net
**Sent:** Sunday, March 04, 2012 7:41 PM
**To:** larryandmarilyn@grar.com
**Subject:** House to See -- Kelley & Robin

Can we see some houses Friday at 2:00 pm ??

We drove by white fawn house... cute woody setting and neighborhood...

8710  White Fawn http://realestate.mlive.com/?classification=real+estate&temp_type=detail&tp=RE_mlive&
property=mlive.com&finder=buy&ad_id=585710490

1 of 2                                                                                      8/13/2014 12:16 PM

Marilyn

**From:** kelleybrown1@comcast.net
**Sent:** Friday, March 09, 2012 7:41 AM
**To:** larryandmariland
**Subject:** HOME SWEET HOME

Marilyn-

Robin and I need to look at houses regardless of Greg / Mortgage because we have all of us today to look at them since it is a half day for kids....

4 houses to look at would be great!

Greg is working on our paperwork 1st thing this morning and we just have a few more things to get him.

_____

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.1913 / Virus Database: 2114/4858 - Release Date: 03/08/12

2

BROWN 000111

**KB**

| | |
|---|---|
| From: | Larry & Marilyn [larryandmarilyn@grar.com] |
| Sent: | Friday, March 09, 2012 10:25 AM |
| To: | kelleybrown1@comcast.net; Robin Thomas |
| Subject: | Re: HOME SWEET HOME |

Kelley and Robin

I did not schedule other appointments this afternoon because I had it booked for you guys. I am at a disadvantage here. Until I know what you can buy – and the $200,000 range is not on the table now until there is some determination on your house on 36th St. Even if you buy 5% down conventional because of the PMI you are not there. Until I have a number I do not know what to schedule. I agree 4 houses would be great but which 4. Three of the homes Robin sent are about $200,000 or over. One is $154,000. I don't know what you can buy. I know you need to buy NOW. When I actually get the information I need – the amount you can qualify for in writing – I can and will clear my schedule for you. We will find you a home that you can purchase. A seller won't even look at an offer until I send that piece of paper with it.

I left a message for Greg this morning and hopefully I will hear something soon. The issue is I need to schedule appointments. That means calling a listing agent, having them talk to the seller and make arrangements. If there is a pet in the home the owner needs to make arrangements. I have been asking all week for the information I needed to do this. When I call to schedule and appointment the first thing I am asked is if my buyer is approved. I am asked how they would buy and what the time frame is. I need those answers. I can sometimes schedule a vacant home quickly but that depends how quickly I can reach the listing agent. Usually scheduling showings takes 24 hours or more. Looking at homes you can't buy does not get you to the finish line faster. I know Robin can't look Saturday or Sunday. You are not available either. We can look most evenings because we have daylight until almost 7:00 now. I know this is hard but I don't have the information I need to work with. Usually when a buyer is looking to buy they sit down face to face with a mortgage lender for an appointment that can last over an hour. You bring all the docs they ask for to the meeting and fill out a formal application. The loan officer discusses with you all of the various options and what will or will not work. After you leave the information is processed and within a couple days the end product – an approval letter is issued. This is being put together in pieces and you still (at least I don't think so) have not sat down face to face with Greg. This has resulted in a lot of missed information and confusion and taken MUCH longer that it should have. I will do everything I can to get this done for you.

I am not doing my job for you if I have you write an offer, invest your hard earned money into inspections, get the kids excited, waste your time when you find out 30 days from now you can't close on the house you bought (or tried to buy). I talked to another lender I have worked with in the past yesterday about FHA possibilities. She told me you guys would have to qualify for BOTH mortgages (36th St and the new home) and they will not allow rent as income. This is not easy. I also wondered if Robin could do RD by herself and and MCC certificate and qualify in the $150 to $160 range. Until the issue of the 36th St house is resolved we have a problem. If we need to go this route Robin will need to go to another lender because Greg does not participate in the MCC program.

Keep me posted with what is happening and I will wait for Greg's call here.

1

BROWN 000110

P000003

Exhibit 3

http://web.mail.comcast.net/zimbra/h/printmessage?id=526627&tz=...

XFINITY Connect

kelleybrown1@comcast.net
- Font Size -

**KELLEY BROWN DOCS My Tax Form**

From : kelleybrown1@comcast.net

Sun, Feb 26, 2012 09:12 PM
⬭ 1 attachment

Subject : KELLEY BROWN DOCS My Tax Form

To : Greg Salisbury <gsalisbury@adamortgage.com>

I have attached my final tax form.
FYI: It may be lengthy...
Perhaps you could tell me about how much home we can buy so we can keep a good lookout...
We both make a combined 63k.

Thanks-

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

Kelley R Brown 2011 Tax Return.pdf
2 MB

1 of 1

7/9/2014 5:32 PM

BROWN 000078

XFINITY Connect                                                                      kelleybrown1@comcast.net
                                                                                     + Font Size -

Fwd: ROBIN DOCS #2

From: kelleybrown1@comcast.net                                                      Sun, Feb 26, 2012 07:55 PM
██████████ ROBIN DOCS #2 ██████████
██████████████████████████████████

4 U Sweetheart!

---

Kelley Brown
kelleybrown1@comcast.net
(616) 706-5123

---

**From:** "Greg Salisbury" <gsalisbury@adamortgage.com>
**To:** kelleybrown1@comcast.net
**Sent:** Sunday, February 26, 2012 5:26:43 PM
**Subject:** RE: ROBIN DOCS #2

Do you want me to pull █████ edit report now or wait until the 2 tradelines from the letters get corrected?  I need █████████████ and the current last name she is using.  Paystubs have █████ but 2011 taxes have █████.

Thanks,
Greg Salisbury
Branch Manager
616-258-5662
Toll Free: 887-353-7117
Fax: 877-888-826,
Email: gsalisbury@adamortgage.com
CONFIDENTIALITY AND PRIVILEGE NOTICE
*This electronic mail transmission and any attachment may contain confidential, proprietary, and/or legally privileged personal information, as that term is defined in the Gramm-Leach-Bliley Act (collectively, Confidential Information), intended for the named recipient('s) only. Any review, use, disclosure, distribution, copying or other action regarding the information contained in this transmission and any attachment by an unnamed recipient is legally prohibited. If you are not a named recipient, immediately call me at 888-826-7117 or send a reply email and then delete and purge this transmission and any attachment from your computer system. Thank you.*

---

http://web.mail.comcast.net/zimbra/h/printmessage?id=532266&tz=...

XFINITY Connect                                                    kelleybrown1@comcast.net
                                                                   – Font Size

Re: New home purchase details

From : kelleybrown1@comcast.net                      Wed, Mar 07, 2012 10:06 PM

Subject : Re: New home purchase details                          4 attachments

To : gsalisbury@adamortgage.com

Greg, I did send you a lot of these docs already so lets try not to duplicate what was already sent...
we sent our licenses in for sure and my tax info...here are my navy w2s...and retirement stuff...

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

**From:** "Greg Salisbury" <gsalisbury@adamortgage.com>
**To:** kelleybrown1@comcast.net, fromilie@yahoo.com
**Cc:** larryandmarilyn@grar.com
**Sent:** Wednesday, March 7, 2012 6:36:00 PM
**Subject:** New home purchase details

Kelley & Robin
Please call me as soon as possible to discuss your mortgage options.
If we try to use the USDA Rural Housing Admin loan with $0 down and NO mortgage insurance we must
demonstrate that your home on 36th St. is too small for you two and the 3 kids. Marilyn said it's a tri-level
and the way those are dealt with for square footage on the appraisal could be a benefit to your situation. If
you can find the most recent appraisal done on that home, please email it to me. I also understand that
your last mortgage was done in 2007 and is an adjustable. Please also send me a recent mortgage
statement. If it is adjustable, I know the rates have dropped over the last few years. You might want to
look at locking the rate on a fixed depending on how long you plan to keep the house.
I'll help you write the letter to USDA and the mortgage underwriter but we also need to fill in some holes
on your Loan Application.
We don't need any originals so either scan and email or fax the following:
- 2 most recent pay stubs for Robin
- 2010 & 2011 W-2s
- 2009 & 2010 federal tax returns for Kelley (all pages) If you have filed 2011, send those and not 2009.
- Navy Reserve pay stubs if you get them
- 2010 & 2011 W-2s for Navy
- home owner's insurance for 36th St home
- driver's licenses
- recent retirement statement (all pages)
- 2 most recent bank statements (all pages)
- recent mortgage statement for 36th St home
- divorce decree (all pages)
I will be able to determine exactly how much house you can afford and the best available program for you
once I have these.
Thanks,
Greg Salisbury
Branch Manager
616-258-5662
Toll Free: 888-926-7117

P000009

**kelleybrown1@comcast.net**                                          7/7/2015 7:07 AM

# Kelley Brown -- Fwd: Homeowners Insurance (USAA)

To Ruth A. Skidmore <ras@msblaw.com>

Please review this E-Mail from our original mortgage guy and feel free to see all parties this was sent to.

Thanks-

Kelley Brown

**From:** kelleybrown1@comcast.net
**To:** gsalisbury@adamortgage.com
**Sent:** Thursday, March 8, 2012 7:32:02 AM
**Subject:** Homeowners Insurance (USAA)

Here is my Home Owners Insurance Info (USAA)

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

**From:** Greg Salisbury
**To:** kelleybrown1@comcast.net, fromille@yahoo.com
**Cc:** larryandmarilyn@grar.com
**Sent:** Wednesday, March 7, 2012 6:36:00 PM
**Subject:** New home purchase details

Kelley & Robin,
Please call me as soon as possible to discuss your mortgage options.
If we try to use the USDA Rural Housing Admin loan with $0 down and NO mortgage insurance we must demonstrate that your home on 36th St. is too small for you two and the 3 kids. Marilyn said it's a tri-level and the way those are dealt with for square footage on the appraisal could be a benefit to your situation. If you can find the most recent appraisal done on that home, please email it to me. I also understand that your last mortgage was done in 2007 and is an adjustable. Please also send me a recent mortgage statement. If it is adjustable, I know the rates have dropped over the last few years. You might want to look at locking the rate on a fixed depending on how long you plan to keep the house.
I'll help you write the letter to USDA and the mortgage underwriter but we also need to fill in some holes on your Loan Application.
We don't need any originals so either scan and email or fax the following:
- 2 most recent pay stubs for Robin

P000352

XFINITY Connect Kelley Brown — Fwd_Homeowners Insurance (USAA...    https://connect.xfinity.com/appsuite/v=7.8.4-12.20180201.071626/print.h...

- 2010 & 2011 W-2s
- 2009 & 2010 federal tax returns for Kelley (all pages) If you have filed 2011,
send those and not 2009.
- Navy Reserve pay stubs if you get them
- 2010 & 2011 W-2s for Navy
- home owner's insurance for 36th St home
- driver's licenses
- recent retirement statement (all pages)
- 2 most recent bank statements (all pages)
- recent mortgage statement for 36th St home
- divorce decree (all pages)

I will be able to determine exactly how much house you can afford and the best available program for you once I have these.

Thanks,
Greg Salisbury
Branch Manager
616-258-5662
Toll Free: 888-826-7117
Fax: 877-587-3536
Email: gsalisbury@adamortgage.com

*CONFIDENTIALITY AND PRIVILEGE NOTICE*
*This electronic mail transmission and any attachment may contain confidential, proprietary, and/or legally privileged personal information, as that term is defined in the Gramm-Leach-Bliley Act (collectively, Confidential Information), intended for the named recipient(s) only. Any review, use, disclosure, distribution, copying or other action regarding the information contained in this transmission and any attachment by an unnamed recipient is legally prohibited. If you are not a named recipient, immediately call me at 888-826-7117 or send a reply email and then delete and purge this transmission and any attachment from your computer system. Thank you.*

- USAA Account Summary.docx (43 KB)

3/28/2018, 5:16 AM

P000353

Exhibit 4

http://web.mail.comcast.net/zimbra/lv/printmessage?id=572563&tz=Am...

XFINITY Connect                                     kelleybrown1@comcast.net

+ Font Size -

LOT # 17

| From : kelleybrown1@comcast.net    ME | Tue, May 22, 2012 07:44 AM |
|---|---|
| Subject : LOT # 17 | 1 attachment |

To : KHamersma@KBHhomes.com  — BUILDER

I hate to ask you this Kurt, but can the roof look normal (Pointed) instead of chopped off
(Cropped) ?? Is this too late for this modification??

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

**From:** Robin Thomas <fromille@yahoo.com> — ROBIN
**To:** kelleybrown1@comcast.net  — ME
**Sent:** Tuesday, May 22, 2012 6:21:57 AM
**Subject:** Fw: New Home schedule

----- Forwarded Message -----
**From:** Kurt Hamersma <khamersma@kbhhomes.com> — BUILDER
**To:** Robin Thomas <fromille@yahoo.com> — ROBIN
**Cc:** larry mennetti <larryandmarilyn@grar.com> — REALTOR
**Sent:** Thursday, May 17, 2012 5:08 PM
**Subject:** New Home schedule

Hi Robin,
The basement wall is in, backfilled and basement and garage floors are poured. The lot looks great after they smoothed everything out.
Lumber will be delivered tomorrow and framing will start the beginning of the week.
I have the schedule attached. Things normally run pretty smoothly so I would figure June 8 or before to have something you would like to see for yourself.
The wood flooring can tentatively be scheduled for July 12 and 13. Let me know if this is a sure thing so I can let Jean from DeGraaf Interiors know what areas she won't be doing vinyl in.
If you tell me which areas you are thinking for the wood floors I will work up a credit for the vinyl in those areas.

## Kurt Hamersma

K.B.H. Homes, L.L.C.
960 West River Center Drive
Suite E
Comstock Park, MI 49321
Cell: (616)437-2681
Phone: (616)785-0902
Fax: (616)785-9656
E-Mail KHamersma@KBHhomes.com

12/21/2014 12:45 AM

P000031

**XFINITY Connect**                                                     kelleybrown1@comcast.net
                                                                        – Font Size –

Re: Allowance main floor flooring

From : kelleybrown1@comcast.net                          Mon, Jun 11, 2012 09:27 AM
Subject : Re: Allowance main floor flooring                    📎 1 attachment
   To : Kurt Hamersma <khamersma@kbhhomes.com>

Thank you... ~~FYI I completed all the wiring over the weekend.~~ Can you verify that floor
install dates are July 12 & 13?

Thanks!!

_____

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

_____

**From:** "Kurt Hamersma" <khamersma@kbhhomes.com>
**To:** kelleybrown1@comcast.net, "Robin Thomas" <fromille@yahoo.com>
**Cc:** "larry mennetti" <larryandmarilyn@grar.com>
**Sent:** Monday, 11 June, 2012 8:55:57 AM
**Subject:** Allowance main floor flooring

**Robin and Kelley,**
The amount we would pay for flooring on the main floor is $1,401.

# Kurt Hamersma

K.B.H. Homes, L.L.C.
960 West River Center Drive
Suite E
Comstock Park, MI 49321
Cell: (616)437-2681
Phone: (616)785-0902
Fax: (616)785-9656
E-Mail KHamersma@KBHhomes.com
www.KBHhomes.com
*"Building Around You"*

1 of 2                                                         12/21/2014 1:15 AM

P000032

P000033

----- Reply message -----
From: "Kurt Hamersma" <khamersma@skhomes.com>
To: "bonfaz@yahoo.com" <bonfaz@yahoo.com>
Subject: Question?
Date: Wed, May 30, 2012 11:31 am

I would presume you're best if we could meet in the morning on the 6th, my 8:00.
Sometimes the scheduled one a day early.

On Wed, May 30, 2012 at 10:12 AM, <bonfaz@yahoo.com> <bonfaz@yahoo.com> wrote:
That's about the basement, really and stance. What day and time would you like to try to meet you at the home?

Sent from my HTC smartphone on the Now Network from Sprint!

----- Reply message -----
From: "Kurt Hamersma" <khamersma@skhomes.com>
To: "Bobb Thomas" <thom8@yahoo.com>
Cc: "Tony nunavo?" <tunxk@rcentralfl.net.com>
Subject: Question?
Date: Wed, May 30, 2012 9:21 am

Bobb
Everything is on schedule,
a little way swing the wires last out?
If you ahead I can then-pour the wire after electricians are complete.
He my meet me and the wire olders there if you require special outlet paging based on this casing.
i don't think it would be a good idea to put anything in the basement. That's the kind of want to be done, there and then I want to do the walls drywall damage.

Kurt

On Wed, May 30, 2012 9:07 AM, Bobb Thomas <thom8@yahoo.com> wrote:
Just want to make sure the dates we still mount for Kelley to go in with the electrician... Does he need to conduct him to let him know that he will be meeting him there?

Also, are we able to put everything in the basement before the house is done? We have a large entertainment center that is going in the basement and would love to put it down there soon to put it out of the way? Is that a possibility if it's out of the way and reviewed? Just don't want to mark up the walls later.

Thank you

Kevin

**Kurt Hamersma**
K.&.K. Homes, L.L.C.
905 West River Center Drive
Suite B
Comstock Park, MI 49321
Cell (616) 437-5461
Phone: (616) 370-6383
Fax: (616) 784-6415
EMAIL: khamersma@skhomes.com
www.skhomes.com
"Building Around You"

176

P000034

Robin Thomas <forcho@yahoo.com>

----- Forwarded Message -----
From: Kurt Hamersma <kevenstma@kbhhomes.com>
To: Robin Thomas <forcho@yahoo.com>
Cc: lary menard <larypietrus@yotgo.com>
Sent: Thursday, May 17, 2012 3:08 PM
Subject: New Home schedule

Hi Robin,

The basement roof is in, backfilled and basement and garage floors are poured. The lot looks great after they smoothed everything out.

Lumber will be delivered tomorrow and framing will start the beginning of the week.

I have the schedule attached. Things normally run pretty smoothly so I would figure June 8-10 for the roll lag, you would like to do yourself.

The wood flooring was tentatively be scheduled for July 12 and 13. Let me know if this is a concern things so I can let Nau from DeGraf Interiors know what area she needs to be doing vinyl in.

If you tell me which areas you are thinking for the wood floors I will work up a could for the vinyl in those area.

**Kurt Hamersma**
K.B.H. Homes, L.L.C.
646 West River Center Drive
Suite B
Comstock Park, MI 49321
Cell: (616) 123-1231
Phone: (616) 123-1203
Fax: (616) 123-0144
EMail: kbhomes.com@kbhhomes.com
www.kbhhomes.com
*"Building Around You"*



P000035

Kurt Hamersma <hamersma@kbhomes.com>

Kobb,
We will be meeting the schedule tentative in the next few days.
We hope to start framing next Monday.
The cealing with not be a problem. I will precede the schedule when it is prepared.
Keep me informed on a problem.

Kurt

On Sun May 13, 2012 at 1:56 PM, Robb Thomas <rjthomas@jttinc.com> wrote:

Hello Kurt,

Wood Floors:

I have been talking with Chris Robinson @ Accent Flooring about the wood floors and just wanted to hopefully get an estimated time frame or calendar window for part of project. his # is 616-724-9200.

Cabling:

Also, Kelley, my boyfriend, works as an JTT Technician. He would like to take care of installing all the cat6 (BOG) and CAT5 cabling in the house and terminate all of this centrally to the furnace room in the basement???
If you agree to this, Kelley would need to gain access or during the electrician stage to run all this, after framing is done. He could just run all the wiring and then terminate all toward the end and he will qualify all wiring and core connections. He could also run the Denarec extensions from this central point to outside of house for Tabs / Core Switch.

Please let me know if he can perform this part of the Hansa Project???

Refrigerator:

I also have Refrigerator for kitchen -- Model / Dimensions it is a GE Side by Side model GSL2JJFXA B3
Stainless Steel.
65.5" Height / 31" Depth / 35"Wdth -- OPEN DOORS to 65.5"

**Kurt Hamersma**
KBA Homes, L.L.C.
900 West River Center Drive
Suite E
Comstock Park, MI 49321
Cell: (616)437-5454
Phone: (616)784-0432
Fax: (616)785-0066
E-Mail: Khamersma@KBHhomes.com
www.kbhomes.com
*Building Around You*

179

Exhibit 5

.nnect                                                                    http://web.mail.comcast.net/zimbra/h/printmessage?id=57884&tz=Ame

**Subject:** Fwd: 9445 Crest Circle Dr Proposed Colors

---------- Forwarded message ----------
From: <swisspack@charter.net>
Date: Thu, May 31, 2012 at 10:09 PM
Subject: Re: 9445 Crest Circle Dr Proposed Colors
To: Theresa Watson <twatson960@gmail.com> — K B H  H O M E S
Cc: Matt & Courtney Wilson <courtneyandmattwilson@charter.net>, Jeff & Erin Roberts <robja75@aol.com> — NEIGHBORS

Theresa,

We had received notice of the color selection changes prior to sending the email on 05-30. Our feelings remain the same as previously stated.

Again, we hope this will not be too much inconvenience. If the buyer's, our new neighbors, are of a strong opinion regarding the proposed color selections please have them contact us and we can arrange to meet. We do not want to negatively impact the exciting time of building of their new home.

Erik Boillat
Matt Wilson        NEIGHBORS
Jeff Roberts

On Thu, May 31, 2012 at 8:41 AM, Theresa Watson wrote:

The buyers changed their color selections again the other day before Kurt gave you the samples. I think the new selections are more subtle since the blue is not on the entire front. They chose the blue (Midnight Surf, which they love) for board and batten *only* on the front of the house. The horizontal D4 siding will be Pebble to match the sides and back. The shutters and front door will be *Black* instead of Clay. They asked about putting the Midnight Surf on the back and sides too, but it would cost more than they can afford. Please keep in mind that the windows will be trimmed in white (linen) and the corners of the house will be linen as well as the facia and soffit. What do you think?
  *Theresa Watson*
KBH Homes, LLC
960 West River Center Drive
Suite E
Comstock Park, MI 49321
Phone: 616 785-0902
Fax: 616-785-9656
Email: twatson960@gmail.com

On Wed, May 30, 2012 at 9:48 PM, <swisspack@charter.net> wrote:   → NEIGHBOR

Theresa,

Thank you for sending the new color samples our way.

We have reviewed your buyer's color selections and, unfortunately we feel there is too much contrast between the colors and we would like to request that they alter their choice somewhat.

In keeping with the siding color combinations of all the other houses in the association, we request that they choose a siding color and a board and batten color that are from the same color family: either a lighter blue and a darker blue, or a lighter brown and darker brown. Accent color should be restricted to shutters and doors. Something like this would be similar to

Copyright © 2014 Fifth Third Bank, Member FDIC. ⏚ Equal Housing Lender. All rights Reserved
file:///C:/Documents and Settings/Administrator/My Documents/9445 Crest C..
Fifth Third Bank | Summary | Account Activity
Contact Us | Help | FAQs | Service Center | Privacy & Security

BROWN 000106

**XFINITY Connect**

kelleybrown1@comcast.net
+ Font Size -

**Re: 9445 Crest Circle Dr Proposed Color CHANGE**

**From :** Courtney and Matt Wilson <courtneyandmattwilson@charter.net>                    Fri, Jun 01, 2012 02:57 PI

**Subject :** Re: 9445 Crest Circle Dr Proposed Color CHANGE

**To :** kelleybrown1@comcast.net

**Cc :** swisspack@charter.net, robja75@aol.com, Robin Fromille <fromille@yahoo.com>

Kelley,

I just got you messages.  The board says these colors are a go.

Matt

On Jun 1, 2012, at 11:40 AM, kelleybrown1@comcast.net wrote:

> Switching Color from Midnight Surf to Saddle Brown on Front Board and Battan (Vertical) -- so Pebble (Horizontal) on
> entire house front sides and Saddle Brown in front as Accent Color (Vertical/Front)  same color family...
>
> I hope this is a go and please Reply to All on this!!!   We have to get order in Monday so please let us or Teresa know
> ASAP!
>
> Kelley & Robin
> _____
>
> Kelley Brown
> kelleybrown@comcast.net
> (616) 706-6123

**From:** kelleybrown1@comcast.net
**To:** swisspack@charter.net, courtneyandmattwilson@charter.net, robja75@aol.com
**Cc:** robja75@aol.com
**Sent:** Friday, June 1, 2012 9:38:56 AM
**Subject:** 9445 Crest Circle Dr Proposed Colors

Can I please meet with someone ASAP to go over the color scheme of our new
house ???

Please call me!!!

_____

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

BROWN 000158

P000048

Exhibit 6

STATE OF MICHIGAN

IN THE KENT COUNTY CIRCUIT COURT


KELLEY BROWN,

        Plaintiff,

v                     File No:  15-10556-CZ

ROBIN THOMAS,

         Defendant.

_____/


DEPOSITION OF KELLEY BROWN

Taken by the Defendant on the 29th day of September, 2016,

at the offices of McShane & Bowie, 99 Monroe Avenue, N.W.,

Grand Rapids, Michigan at 4:34 p.m.

APPEARANCES

For the Plaintiff:  Ms. Ruth A. Skidmore (P58913)
                    McShane & Bowie, PLC
                    99 Monroe Avenue, N.W., Suite 1100
                    Grand Rapids, Michigan 49503
                    (616) 732-5000
                    ras@msblaw.com

For the Defendant:  Mr. Stanton P. Galdys (P79573)
                    Galdys Law, PLLC
                    2153 Wealthy Street, S.E., #196
                    East Grand Rapids, Michigan 49506
                    (616) 490-0656
                    galdyslaw@gmail.com

REPORTED BY:        Lauret Henry, CSR 6469
                    Certified Shorthand Reporter
                    Registered Professional Reporter


**Page 1**

Kelley Brown                                      September 29, 2016
Kelley Brown vs.                                          Robin Thomas

```
 1                      TABLE OF CONTENTS

 2

 3    WITNESS:                                    PAGE:

 4    KELLEY BROWN

 5    Examination by Mr. Galdys                      3

 6    Examination by Ms. Skidmore                   48

 7    Further Examination by Mr. Galdys            55

 8

 9    EXHIBITS:                                   PAGE:

10    Exhibit 1  Lien release and copy of check   19

11    Exhibit 2  Blake's Seamless Gutter invoice  29

12    Exhibit 3  Nicholson Sprinkling invoice     34

13

14         (Original exhibits photocopied and sent to
            both counsel; originals sealed with original
15          transcript.)

16

17

18

19

20

21

22

23

24

25

                            Page 2
```

**Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501**    ©
**(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com**

Kelley Brown                                                    September 29, 2016
Kelley Brown vs.                                                    Robin Thomas

```
 1        separated from.

 2   Q    Have you ever been the plaintiff in any other lawsuit?

 3   A    A custody -- family -- in the family court.

 4   Q    You had some sort of family proceeding against someone

 5        else?

 6   A    Sure.

 7   Q    Did you ever say to Robin that her former husband made

 8        out well, and I'm going to make out well, too?

 9   A    No.

10   Q    No?  You're not using this action as a form of

11        harassment towards Robin?

12   A    No.

13   Q    Did you attend the closing?

14   A    Yes, I did.

15   Q    Who all was at the closing?

16   A    Robin, myself, Marilyn Mennetti, and there was like

17        three other women.  It was like -- they were all party

18        to the closing.

19   Q    Do you know were the three other women from certain

20        agencies?

21   A    They must have been from like the title company, and it

22        was somebody, a representative from KBH, I believe.  I

23        didn't get like all their names.

24   Q    Did you ever say at the closing, Robin, why am I not on

25        this paperwork?
```

                                **Page 45**

P000099

Kelley Brown
Kelley Brown vs.

September 29, 2016
Robin.Thomas

```
 1    A    Yes, I did.

 2    Q    And what did she say?

 3    A    She made it sound like it was like an oversight or like

 4         she was just as -- kind of like she didn't -- like she

 5         was just as dumbfounded as I was that I wasn't prepared

 6         on the documentation.

 7    Q    But she signed the documentation?

 8    A    Right.

 9    Q    You saw her sign the documentation?

10    A    Yeah.

11    Q    And she told you she was surprised you weren't on it?

12    A    Yeah, that's how it went.

13    Q    Did you ever say -- did you ever at any point during

14         the closing say to anyone, other than Robin, I should

15         be on this paperwork?

16    A    Yes, I did.

17    Q    And who did you say that to?

18    A    To the whole group.

19    Q    And what did anyone else say?

20    A    That's when one of the ladies stepped up and said,

21         well, Robin can put you on the mortgage in six months.

22    Q    Who said that?

23    A    It was one of the people in the proceedings.

24    Q    You don't remember?

25    A    No, I don't.
```

**Page 46**

**Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501**    ©
**(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com**

Kelley Brown                                                    September 29, 2016
Kelley Brown vs.                                                       Robin Thomas

| | | |
|---|---|---|
| 1 | Q | It wasn't Marilyn? |
| 2 | A | No, it wasn't. |
| 3 | Q | It was one of the other three women who were there? |
| 4 | A | Correct. |
| 5 | Q | And she said that you could be later added to the |
| 6 | | title? |
| 7 | A | Correct. |
| 8 | Q | Did Robin ever say anything in response to that? |
| 9 | A | That's what she agreed on, that she was going to put me |
| 10 | | on the mortgage in six months. |
| 11 | Q | So she said aloud during that -- during the closing, I |
| 12 | | will put Kelley on in six months? |
| 13 | A | That's what she agreed to do with the recommendation |
| 14 | | from the gal in the closing. |
| 15 | Q | How did she agree? |
| 16 | A | I looked at Robin and I asked her point blank, I'm |
| 17 | | like, are you going to do this in six months, and she |
| 18 | | said, yes. |
| 19 | Q | And so you let her sign the paperwork by herself? |
| 20 | A | We were -- we went and -- she signed and we went and |
| 21 | | celebrated and had a house. |
| 22 | Q | And she never told you at any time, I'm building this |
| 23 | | house, prior to you moving in together, I'm building |
| 24 | | this house for me and my kids? |
| 25 | A | No. |

**Page 47**

P000101

Kelley Brown                                    September 29, 2016
Kelley Brown vs.                                        Robin Thomas

```
 1   Q.   She never --
 2   A    It was -- it was all a combined effort.  It was always
 3        going to be -- even through our -- the housewarming
 4        party that we had, it was Kelley and Robin, or Robin
 5        and Kelley's housewarming party.
 6   Q    Right.  I'm asking what she told you.  I'm not asking
 7        what was the atmosphere, what were the parties.  I'm
 8        asking did Robin ever tell you, Kelley, I'm building
 9        this house for me and my kids?
10   A    No.
11   Q    This is not our house?
12   A    No.
13             MR. GALDYS:  I think that's all the questions
14        I have.
15             MS. SKIDMORE:  I have a quick few to
16        follow-up.  Can we go off the record for just a second?
17                  (Brief recess.)
18                  EXAMINATION
19   BY MS. SKIDMORE:
20   Q    Mr. Brown, in your deposition testimony, you indicated
21        that you had interfaced with the builder in connection
22        with the construction of the home.  When you interfaced
23        with the builder, did you do so as a prospective owner
24        of the home?
25   A    Yes, I did.
```

**Page 48**

P000102

Kelley Brown                                              September 29, 2016
Kelley Brown vs.                                                 Robin Thomas

```
 1    Q    And you did that on the assumption that you would be
 2         included on the title to the home?
 3    A    Correct.
 4    Q    Did you also interface with the homeowners' association
 5         as a prospective owner of the home?
 6    A    Yes, I did.
 7    Q    You testified that you paid for the hardwood floor
 8         materials that were installed in the home and also
 9         supplied the labor for that installation, correct?
10    A    Correct.
11    Q    And that was done before the closing on the home,
12         correct?
13    A    Yes.
14    Q    Would you have contributed the hardwood flooring and
15         the labor if you had known you were not going to be
16         included as an owner of the home?
17    A    No.
18    Q    In connection with the wiring that you testified you
19         paid to install before the closing on the home, did you
20         do that on the understanding that you would be an owner
21         of the home?
22    A    Yes.
23    Q    Would you have made that installation and incurred that
24         expense if you had not expected to become an owner of
25         the home?
```

**Page 49**

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501    ©
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com

Kelley Brown
Kelley Brown vs.

September 29, 2016
Robin Thomas

```
 1    A    No.

 2    Q    Then you testified with respect to the closing that you

 3         attended, you expected at that time to be signing the

 4         documentation that would make you an owner of the home,

 5         correct?

 6    A    Yes.

 7    Q    And you were surprised when you arrived at the closing

 8         and were not required to participate?

 9    A    Yes.

10    Q    And was there some discussion of an MCC certificate for

11         first-time homebuyers in connection with that closing?

12    A    Yes, there was.

13    Q    Can you tell me what role that played in the

14         explanation for why you were not included on the title

15         at that time?

16    A    That's kind of where the realtor and I like kind of

17         fell off as far as the correspondence was at that

18         point, and I didn't know anything about this MCC or

19         anything about what this was.  But I -- since I owned a

20         house, it's come -- I came to realize that I would not

21         be able to -- I wouldn't qualify, so what kind of

22         happened, this MCC certificate took that -- kind of

23         myself off of the closing, and that's why Robin was,

24         she was able to qualify for this MCC certificate that

25         the realtor, Marilyn Mennetti, had proposed, and I
```

**Page 50**

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan  49501
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com                    ©

P000104

```
 1          don't think I ever spoke with the realtor after that.
 2          Everything was kind of just done through Robin and the
 3          realtor and through that closing process and the --
 4          that's why I wasn't on any of the documentation.
 5   Q      When you say you wouldn't have qualified, you mean for
 6          the special first-time homebuyers' certificate, not
 7          that you wouldn't have qualified for the mortgage loan?
 8   A      Right.
 9   Q      Okay.
10   A      Because I owned another residence and the mortgage --
11          you can't have a mortgage for like three years or
12          something like that.
13   Q      Was there anytime at which you were involved with a
14          mortgage lender in connection with the proposed
15          construction of this house where you supplied your
16          financial documentation on the understanding that you
17          would be a part of the mortgage process?
18   A      Yes.  We originally went to Greg Salisbury from Ada
19          Mortgage and I -- I gave him all of my documentation
20          and Robin's documentation to work up to figure out what
21          we would prequalify for, and --
22   Q      And you provided Mr. Salisbury with your income
23          information on the understanding that you would be a
24          part of the mortgage loan application, correct?
25   A      That's correct.
```

**Page 51**

P000105

```
 1   Q    And at the closing you indicated this is when you
 2        learned that you had not been included on the
 3        documentation, but there was also a representation to
 4        the effect that you would be added to the title later?
 5   A    Correct.
 6   Q    Is that correct?  All right.  So post-closing then, you
 7        testified that you made certain additional
 8        contributions to the home, including gutters, lawn
 9        installation, stove, and half of the sprinkler system.
10        With respect to the contribution of the lawn
11        installation, would you have made that contribution in
12        the absence of the representation that you would be
13        added to the title later?
14   A    No.
15   Q    In connection with the gutter installation, is that a
16        contribution and improvement you would have made in the
17        absence of a representation that you were going to be
18        added to the title later?
19   A    No.
20   Q    With respect to the Jenn-Air stove that was supplied
21        and installed to the home, did you make that in
22        reliance on the representation that you would later be
23        added to the title on the home?
24   A    Did I bring that into the house to --
25   Q    On the assumption that it would be made a part of the
```

**Page 52**

Great Lakes Shorthand, P.O. Box 2002, Grand Rapids, Michigan 49501                ©
(800) 234-2044   (888) FAX-6776   gls@greatlakesshorthand.com   www.greatlakesshorthand.com

# Exhibit 7

(616) 560-3397 Cell
(616)957-2306 Fax
(800) 968-4234 Toll Free
NMLS License # 153580

Proudly serving West Michigan for over 25 Years!

**From:** kelleybrown1@comcast.net [mailto:kelleybrown1@comcast.net]
**Sent:** Wednesday, March 14, 2012 2:32 PM
**To:** Scott DeWolf
**Subject:** ROBIN THOMAS INFO

Perhaps you have a check off list and could email me back w/ the outstanding docs after these???


Thanks-

_____

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123


This email message and any attachments are intended only for the use of the addressee(s) named above. This message may contain privileged and confidential information. If you are not the intended recipient, any review, dissemination, distribution, or copying is strictly prohibited. If you received this email message in error, please immediately delete it and notify the sender by replying to this email message or by telephone.

robin2010 w2.pdf
563 KB
robin bank1.pdf
247 KB
robin bank2.pdf
566 KB
robin bank3.pdf
359 KB
robin credit letter 1.pdf
136 KB

XFINITY Connect                                                                                    kelleybrown1@comcast.net
                                                                                                    ± Font Size ±

**Re: ROBIN THOMAS INFO**

From : kelleybrown1@comcast.net                                                      Wed, Mar 14, 2012 04:00 PM
Subject : Re: ROBIN THOMAS INFO                                                      📎6 attachments
To : Scott DeWolf <sdewolf@exchangefinancial.com>

Here are more docs and for sure her 2010 W2.... hopefully not too overwhleming and there may be a duplicate...

THANKS!

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123

**From:** "Scott DeWolf" <sdewolf@exchangefinancial.com>
**To:** "kelleybrown1@comcast.net" <kelleybrown1@comcast.net>
**Sent:** Wednesday, March 14, 2012 3:50:53 PM
**Subject:** RE: ROBIN THOMAS INFO

2010 W-2
Divorce decree
Court order for child support
3 month bank statements to show receipt of friend of the court if direct deposited (its not showing on the statement provided)
Last statement on any other asset accounts including retirement.
Copy of the Satisfaction of Judgment for the civil judgment with Citi (the attorney that provided the letter should be preparing this).
Document the source of funds to pay off the judgment.

Thanks,

Scott DeWolf
Exchange Financial Mortgage Corp.
(616) 575-9850 Direct

P000029

Exhibit 8

KB

| | |
|---|---|
| From: | The Boillats [swisspack@charter.net] |
| Sent: | Friday, September 28, 2012 9:06 AM |
| To: | kelleybrown1@comcast.net |
| Cc: | fromille@yahoo.com; Courtney and Matt Wilson; Roberts Jeff; Lane Steve & Gail and Elizabeth |
| Subject: | Re: Robin Thomas / ETC |

Hi guys,

Will do on adding Robin's email

Please go ahead and direct dues to treasurer.

We'll get with treasurer and get your reimbursement check.

Thank you,

Erik

On Sep 28, 2012, at 7:44, kelleybrown1@comcast.net wrote:

> Erik-
>
> Also, Robin's E_Mail to be added to the master list = fromille@yahoo.com - Thanks!
>
> We have Assoc. dues for the Association and also a bill for the work done on the common property...
>
> I believe the Dues are $35 / Mo. and should we direct these to the Treasurer or to the Association??
>
> The bill for the common work came to $200.
>
> Thanks!
>
> _____
>
> Kelley Brown
> kelleybrown@comcast.net
> (616) 706-6123

1

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

**From:** kelleybrown1@comcast.net
**To:** "Steven Lane" <steve.lane@myfamilylane.com>
**Sent:** Monday, October 15, 2012 7:42:23 AM
**Subject:** Re: Bill for commom area grading...

I did get underground sprinkling accomplished and it also covers the common area from road back to future trail beginning...This will be really nice after the grass comes in nice and thick!  I am trying to make it seamless from our yard to the Pfeiffles accross this common area and then hopefully a trail can start here to run around the back area for everyone!

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

**From:** "Steven Lane" <steve.lane@myfamilylane.com>
**To:** kelleybrown1@comcast.net
**Sent:** Tuesday, October 2, 2012 4:16:26 PM
**Subject:** Re: Bill for commom area grading...

Just give me a copy, I will write tgat per agreement with Erik neighborhood will pay 25%.
Thanks.  If you need, I can make copies at my house, give me the receipt, I will return the original to you.
On Oct 2, 2012 12:58 PM, "kelleybrown1@comcast.net" <kelleybrown1@comcast.net> wrote:
   can I give you sort of an unofficial bill on this 1 ?  it cost me about 800 dollars to do the lot including the common area which was
   about a quarter of this space ...this included the trees, grass, & seed ...it a little cultivation !

Kelley Brown
kelleybrown1@comcast.net
(616) 706-6123 cell

----- Reply message -----
From: "Steven Lane" <steve.lane@myfamilylane.com>
Date: Sun, Sep 30, 2012 5:32 pm
Subject: Bill for commom area grading...
To: <kelleybrown@comcast.net>

Kelley
I am Steve Lane and am treasurer of the neighborhood.  If you can send me a copy of the bill, I will cut a check for the $200.
Feel free to drop it in my mailbox 9313 Crest Circle Drive.
Thanks.

XFINITY Connect

http://web.mail.comcast.net/zimbra/h/printmessage?id=729620&tz=Am..

XFINITY Connect

kelleybrown1@comcast.net
÷ Font Size -

Re: Bill for commom area grading...

From : kelleybrown1@comcast.net

Fri, Jan 04, 2013 07:44 AM

Subject : Re: Bill for commom area grading...

📎1 attachment

To : Steve Lane (My Family Lane) <steve.lane@myfamilylane.com>

I will forward this to Robin, but I certainly don't think so...

did you put it in our mailbox or did someone receive it at 9445 ??

Thanks!

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

**From:** "Steve Lane (My Family Lane)" <steve.lane@myfamilylane.com>
**To:** kelleybrown1@comcast.net
**Sent:** Friday, January 4, 2013 7:10:50 AM
**Subject:** Re: Fwd: Bill for commom area grading...

Kelley
I delivered the check by hand to your door on Sunday 11/04/2012.  The image below is from my accounting system.  I will check the account statements but could you also make sure it wasn't deposited by your wife?  I will verify the check hasn't been cashed and will stop payment and cut a new check.  Sorry for any confusion.

Exhibit 9

# Invoice

Blake Seamless Aluminum Gutters
24 Richards NW
Grand Rapids Mi 49504

616-560-3653

Blakeeb@hotmail.com

Bill To:
Kelly Brown
9445 Crest Circle Dr.
Rockford Mi

Invoice No:    76
Date:          27 Nov 12

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Seamless aluminum gutters | 73.00 | $3.15 | $229.95** |
| 1x downspouts | 2.00 | $50.00 | $100.00* |
| 2x downspouts | 1.00 | $60.00 | $60.00** |
| 1x downspouts | 1.00 | $70.00 | $70.00** |

230  pd  12/5  — Kw

230
273

* Indicates non-taxable item

| | |
|---|---|
| Subtotal | $459.95 |
| Tax (0.00%) | $0.00 |
| Total | $459.95 |
| Paid | $0.00 |
| Balance Due | $459.95 |

Page 1 of 1

BROWN 000171

P000037



| | |
|---|---|
| Posting Date | 2012 Dec 06 |
| DB/CR Indicator | Debit |
| Amount | $230.00 |
| Posting Check Number | 1114 |
| Posting Account Number | 7160844853 |
| Posting Seq Number | 75812518 |
| Tran Code | 1114 |
| ABA/RT Number | 7240005 |

BROWN 000172

| CUSTOMER'S ORDER NO. | DEPARTMENT Install | DATE 10-9-12 |
|---|---|---|

NAME Robin Thomas Kelley Brown

ADDRESS 9445 Crest Circle Dr

CITY, STATE, ZIP Rockford MI 49341

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| | QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | 1 | Weathermate Install | | 2688 00 |
| 2 | 1 | Plumbing Installation | | 199 00 |
| 3 | | | | 2887 00 |
| 4 | | Tax | | 173 22 |
| 5 | | | | 3060 22 |
| 6 | | $1530 Due April 1st 2013 | | |
| 7 | | | | |
| 8 | | Payed helf on 10-9-12 | | |
| 9 | | $1530 | | |
| 10 | | Check # 1109 | | |
| 11 | | | | |
| 12 | | Brandon Adams | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |

RECEIVED BY

adams RDC5605  KEEP THIS SLIP FOR REFERENCE  01-11 BROWN 0001

P000041

Posting Date 2012 Oct 15 Posting Check Number 1109
Amount $1,530.11



Posting Date  2012 Oct 15 Posting Check Number  1109
Amount  $1,530.11

BROWN 000175

Exhibit 10









File Edit View History Bookmarks Tools Help

xf (36) New Emails | XFINITY by ... × (2) Robin & Kelly's Housewar... × +

https://www.facebook.com/events/372299516173538/ Microsoft (Bing)

Robin & Kelly's Housewarming Party Wmit Home 20+

**Wmit Pros**
Edit Profile

MY EVENTS

- Upcoming 28
- Calendar
- Past
- Create

THIS WEEK

Meet & Greet: 2015 Festi...
Today at 5:30pm

Shanghai Wednesday's ...
Today at 5:30pm

Circus at Mon Jin Lau
Today at 6:30pm

Shanghai Wednesday's ...
Today at 6:30pm

Public Hearing on Restri...
Tomorrow at 7:00pm

Massachusetts - Clinical ...
Friday at 9:00am

EXPERIENCE NIGHT GL...
Friday at 6:00pm

3 More Events

AUG 24

# Robin & Kelly's Housewarming Party

Open Invite · Hosted by Wendy Hanna and Robin Fromille

Join Maybe Decline •••

Friday, August 24, 2012 at 6:00pm
More than a year ago

9445 Crest Circle Dr, Rockford, MI

Your are invited to celebrate Robin & Kelly's new home! Food will be provided; please BYOB and a camping-style chair.

Jason, Robin and 6 other friends went

GUESTS

| 10 | 12 | 136 |
|---|---|---|
| went | maybe | invited |

POSTS View Declines

**Damon Brown** is going
August 24, 2012

Like · Comment

Write a comment...

SUGGESTED EVENTS

**Wedding**
Sat Oct 11 at Kalamazoo, Michi...
57 guests
Join Maybe

Chat (99)

start (2) Robin & Kelly's Ho... 6:19 PM

File Edit View History Bookmarks Tools Help

xf (36) New Emails | XFINITY by ... × (2) Robin & Kelly's Housewar... × +

https://www.facebook.com/events/372299516173538/ Microsoft (Bing)

Robin & Kelly's Housewarming Party Wmit Home 20+

**Kelley Brown** is going
August 21, 2012

Like · Comment

REALTOR (S)

**Larry Mennetti DUH**
August 22, 2012 at 11:03am · Like

Write a comment...

**Courtney Titus** is going
August 20, 2012

Like · Comment

**Courtney Titus** I will be coming from work.
August 22, 2012 at 10:39am · Like

Write a comment...

**Traci Mautz Chisholm**
August 22 2012

I'm so bummed we won't be able to go. We are camping this weekend. I hope we can have a raincheck!

Like · Comment

Write a comment...

5? guests
Join · Maybe

**Brewer's Grove Tree Beer Rel...**
Friday at Rockford Brewing
Fundraiser · by Rockford Brewing
Join · Maybe

**AIDS Walk + Run 2014**
Sat Sep 13 at Rosa Parks Circle
Fundraiser · 3 friends are going
Join · Maybe

**Room Full of Elephants**
Tomorrow at Rockford Brewing
Concert · by Rockford Brewing
Join · Maybe

**Hannah Rose n the GraveTone...**
Saturday at Rockford Brewing
Concert · by Rockford Brewing
Join · Maybe

**Wine & Canvas - Grand Rapids**
Wed Sep 17 at Uccellos Ristor...
Dining · by Uccellos Ristorante
Join Maybe

English (US) · Privacy · Terms · Cookies · More
Facebook © 2014

Chat (87)

start (2) Robin & Kelly's Ho... housewarming2 - Paint 6:22 PM

File Edit View History Bookmarks Tools Help

(36) New Emails | XFINITY by ... × (2) Robin & Kelly's Housewar... × +

https://www.facebook.com/events/372299516173538/ Microsoft (Bing)

Robin & Kelly's Housewarming Party Wmit Home 20+

**Sue MacLaren Bristol**
August 12, 2012

I hope to stop by for a bit. Paul will be at the White Caps game with Sam. Excited for your new home. ☺

Like · Comment

**Nikki Warren** We will be in Wisconsin for a wedding. Sorry
August 12, 2012 at 10:56pm · Like

Write a comment...

**Wendy Hanna** created the event.
August 11, 2012

Like · Comment

**Cheri Westcott** I'm going to be gone up north!!! ☹. Bummer!!!
August 11, 2012 at 2:07pm · Like

Write a comment...

**Robin Fromille** is going.
August 11, 2012

Like · Comment

Write a comment...

27 guests
Join · Maybe

**Brewer's Grove Tree Beer Rel...**
Friday at Rockford Brewing
Fundraiser · by Rockford Brewing
Join · Maybe

**AIDS Walk + Run 2014**
Sat Sep 13 at Rosa Parks Circle
Fundraiser · 3 friends are going
Join Maybe

**Room Full of Elephants**
Tomorrow at Rockford Brewing
Concert · by Rockford Brewing
Join Maybe

**Hannah Rose n the GraveTone...**
Saturday at Rockford Brewing
Concert · by Rockford Brewing
Join Maybe

**Wine & Canvas - Grand Rapids**
Wed Sep 17 at Uccellos Ristor...
Dining · by Uccellos Ristorante
Join · Maybe

English (US) · Privacy · Terms · Cookies · More
Facebook © 2014

Chat (99)

start (2) Robin & Kelly's Ho... housewarming3 - Paint 6:23 PM

**Robin & Kelly's Housewarming Party**

Wmit    Home 20+

**Larry Mennetti** ROBIN, YOU ARE JUST INVITING KIDS BECAUSE YOURS ARE GONNA BE THERE 😊
August 22, 2012 at 11:02am · Like

**Mark Jones** Sorry that we will not be able to make it. Heading down to the lake on Friday. Have a nice time and we will stop by some time soon when you're not ready⏸️
August 23, 2012 at 7:30am · Like

**Geoffrey Broomberg** have a good one kids...sorry I can't make it.
August 23, 2012 at 2:39pm · Like

Write a comment...

**Leasa Colwill Hotchkiss**
August 22, 2012

Hi Guys!! Congrats. Wayne has to work till midnight so We won't be able to join you. But we can make time to play cards soon

Like · Comment

Write a comment...

**Julie Sanders VanGessel**
August 22, 2012

Robin and Kelly , so happy you are finally in your new home and would LOVE to see it, not sure if we can swing it for Friday or not... double booked at this point. Wishing you all the best together in your new home.

Like · Comment

**Brewer's Grove Tree Beer Rel...**
Friday at Rockford Brewing
Fundraiser · b, Rockford Brewing
Join · Maybe

**AIDS Walk + Run 2014**
Sat Sep 13 at Rosa Parks Circle
Fundraiser · 5 friends are going
Join · Maybe

**Room Full of Elephants**
Tomorrow at Rockford Brewing
Concert · b, Rockford Brewing
Join · Maybe

**Hannah Rose n the GraveTone...**
Saturday at Rockford Brewing
Concert · b, Rockford Brewing
Join · Maybe

**Wine & Canvas - Grand Rapids**
Wed Sep 17 at Uccellos Ristor...
Dining · b, Uccellos Ristorante
Join · Maybe

English (US) · Privac, Terms · Cookies · More ·
Facebook © 2014

Chat (87)

Exhibit 11

**CHICAGO TITLE OF MICHIGAN**
19 N. Monroe, Rockford, MI 49341
Phone: (616)866-0120   Fax: (616)326-2534

## BUYER'S SETTLEMENT STATEMENT

| | |
|---|---|
| **Date:** July 8, 2015 | **Time:** 03:09 PM |
| **Settlement Date:** July 8, 2015 | **Escrow No.:** 410675417RCK |
| **Borrower:** Stacey Robach | **Escrow Officer:** |
| 9128 Lady Lauren Drive NE | |
| Rockford, MI 49341 | |
| **Seller:** Robin L. Thomas | |
| 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |
| **Property:** 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |

| | DEBIT | CREDIT |
|---|---|---|
| **Financial Consideration** | | |
| Total Consideration | 235,000.00 | |
| Deposit or Earnest money | | 1,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City/Town Taxes at $1,808.31 | 876.91 | |
| 07/08/15   to   01/01/16 | | |
| Association dues at $40.00 | 30.67 | |
| 07/08/15   to   07/31/15 | | |
| County Taxes at $746.43 | | 384.46 |
| 01/01/15   to   07/08/15 | | |
| | | |
| **Escrow Charges** | | |
| Closing Fee | 250.00 | |
| Chicago Title of Michigan | | |
| | | |
| **Title Charges** | | |
| Title Insurance | | |
| Chicago Title Insurance Company | | |
| ALTA Homeowners (10/17/1998) "Freedom | | |
| Policy" | | |
| | | |
| **Recording Charges** | | |
| Recording Fees | 17.00 | |
| Kent County Register of Deeds | | |
| Tax Certification Fee | 5.00 | |
| Kent County Treasurer | | |
| | | |
| **Other Debits/Credits** | | |
| Administration Fee | 550.00 | |
| Re/Max United | | |
| **Subtotals** | 236,729.58 | 1,384.46 |
| **Balance Due FROM Borrower** | | 235,345.12 |
| **TOTALS** | 236,729.58 | 236,729.58 |

Borrower

*Stacey J. Robach*
Stacey Robach

CHICAGO TITLE OF MICHIGAN, INC.
Settlement Agent

P000311

### CHICAGO TITLE OF MICHIGAN
19 N. Monroe, Rockford, MI 49341
Phone: (616)866-0120   Fax: (616)326-2534

## SELLER'S SETTLEMENT STATEMENT

| | |
|---|---|
| **Date:** July 8, 2015 | **Time:** 03:09·PM |
| tlement Date: July 8, 2015 | **Escrow No.:** 410675417RCK |
| **Borrower:** Stacey Robach | **Escrow Officer:** |
| 9128 Lady Lauren Drive NE | |
| Rockford, MI 49341 | |
| **Seller:** Robin L. Thomas | |
| 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |
| **Property:** 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |

| | DEBIT | CREDIT |
|---|---|---|
| **Financial Consideration** | | |
| Total Consideration | | 235,000.00 |
| Dep. retained ($1,000.00) | 1,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| City/Town Taxes at $1,808.31 | | 876.91 |
| 07/08/15      to      01/01/16 | | |
| Association dues at $40.00 | | 30.67 |
| 07/08/15      to      07/31/15 | | |
| County Taxes at $746.43 | 384.46 | |
| 01/01/15      to      07/08/15 | | |
| | | |
| **Commissions** | | |
| Listing Broker's Commission to Five Star Real Estate 235,000.00 @ 3.00% = 7,050.00 | | |
| Selling Broker's Commission to Re/Max United 235,000.00 @ 3.00% = 7,050.00 | 13,100.00 | |
| | | |
| **Escrow Charges** | | |
| Closing Fee | 250.00 | |
| Chicago Title of Michigan | | |
| | | |
| **Title Charges** | | |
| Title Insurance | 1,332.18 | |
| Chicago Title Insurance Company ALTA Homeowners (10/17/1998) "Freedom Policy" | | |
| | | |
| **Recording Charges** | | |
| City/County Tax/Stamps | 258 50 | |
| Kent County Register of Deeds | | |
| State Tax/Stamps | 1,762 50 | |
| Kent County Register of Deeds | | |
| | | |
| **Payoffs** | | |
| PennyMac Loan Services | | |
| Total Payoff | | 157,260.19 |
| Loan Payoff | 156,745.63 | |
| Per Diem @ 16.080000 | | |
| Additional Interest (From 06/17/15 Through 07/18/15) | 514.56 | |
| | | |
| | | |
| **Other Debits/Credits** | | |
| Well Inspection | INV# 15-06-023 | 225.00 |
| Kathleen Hill, R.S. LLC | | |
| Administration Fee | | 245.00 |
| Five Star Real Estate | | |
| 2015 Summer Taxes | 41-07-27-420-017 | 1,808.31 |
| Courtland Township Treasurer | | |

SELLER'S SETTLEMENT STATEMENT – Continued

| | DEBIT | CREDIT |
|---|---|---|
| July condo Dues | 40.00 | |
| TBD | | |
| **Subtotals** | 177,666.14 | 235,907.58 |
| **Balance Due TO Seller** | 58,241.44 | |
| **TOTALS** | 235,907.58 | 235,907.58 |

Seller

Robin L. Thomas

CHICAGO TITLE OF MICHIGAN, INC.
Settlement Agent

P000313

Exhibit 12

City, State, or Z:

**9445 Crest Circle Dr NE, Rockford, MI 49341**





© 2016 Microsoft Corporation © 2016 HERE

# 9445 Crest Circle Dr NE,
Rockford, MI 49341

**4 beds · 2.5 baths · 2,004 sqft ·**

Edit home facts for a more accurate Zestimate.

**OFF MARKET**

Zestimate®: $257,845

Rent Zestimate®: $1,428/mo

.Est. Refi Payment
$911/mo

---

### Thinking About Selling?
Find a local agent who can give you a professional
estimate of your home value.

---

Seller is relocating and selling this THREE YEAR new home in the Rockford
School District. When you drive into the neighborhood the first thing you
will notice is the spacious lots, winding streets and right across the street
from this home is a neighborhood play area. This is a KBH home custom
built for the current owner. The main floor is very open with lots of
windows and beautiful real hardwood floors throughout. When you enter
the front door there is a bonus room perfect for a formal living...

**FACTS**

- Lot: 0.7 acres
- Single Family
- Built in 2012
- All time views: 605

**ADDITIONAL FEATURES**

P000307

Exhibit 13

I have attached multiple letters from friends and co-workers stating evidence against what Mr. Brown has alleged.

Mr. Brown and I started having serious problems right after I moved into my new home. Mr. Brown would eat all of the food in the house not caring if there was enough for my two children. Mr Brown was angry a lot and was not nice to my children. My daughter told me on more than one occasion how Mr. Brown was mean and not talking nice to her or her brother. They wanted him to leave. My children have and will always come first. Especially after being in a bad, controlling marriage where my ex had severe anger issues.

When Mr. Brown finally left on March 1,2014 he did not leave nicely. He would drive by my house all the time. Neighbors would call me to let me know that he was sitting outside the neighborhood. My ex husband saw him sitting there one time and came to the house to make sure that the kids and I were ok. The police were called each time and each time Mr. Brown was told to leave, that he had no reason to be there. Attached you will find a PPO that I had to get against Mr. Brown. He was scaring me and my children. Mr. Brown knows he has problems but cannot admit to it. He tries to sue everyone that he goes out with hoping to gain something.

Also, attached you will find a copy of a letter from the first lawyer that Mr. Brown tried to get to sue me and she dropped the case after learning more about Mr. Brown. I also, have attached a letter that my lawyer at the time sent to Mr. Brown.

Mr. Brown had a residence on 36th street in Grand Rapids. So, he had somewhere to go.

I will say again that I never had any intention of having Mr. Brown's name on my home. I was very proud of myself for doing that on my own.

Also, Mr. Brown never was concerned with receiving anything from my home (money, flooring, any other items) until he found out that I was selling my home. Mr. Brown had over a year to ask for anything and he never did!! If you would look into Mr. Brown's past you will see that he has taken other's to court just to get money from them.

Thank you

*Robin Krutel*

Robin Krutel

02-04-2016

P000337

02-04-2016

To whom it may concern:

Answers to allegations:

1. ?
2. Robin Krutel, address is 7161 Cuesta Way, Rockford, Mi 49341
3. I, Robin, broke up with Mr. Brown in November 2013. People from my job at the time heard me break up with Mr. Brown. However, he refused to leave at the time. So, in January of 2014 I found out that Mr. Brown was making plans to meet some girls at his friend's cabin, so once again I asked him to leave and he refused! Finally on March 1 when I had broken up with him and asked Mr. Brown to leave for the third time Mr. Brown finally left my home at 9445 Crest Circle, Rockford. So, Mr. Brown had ample time to move out and kept refusing.
4. Mr. Brown was never asked one time to ever put any money into my home! As you will see in the attached letter from a colleague, I had wanted the floors that the builder was putting into my home because I didn't want real wood because I had been told by multiple people that it scratches easy and I had planned on having my 2 labs back from my marriage. I had told Mr. Brown on several occasions that I didn't want the real wood floors. He insisted on doing it anyway as a gift. The underground sprinkling is another example. I had told Mr. Brown that I was going to wait until spring to put them in when I received my taxes back. And once again he wouldn't listen. He hired a friend of his and he paid half and then when my taxes came in the spring I paid that last half. Mr. Brown did not pay for any landscaping. I went to Lowe's and to Greenstone myself and purchased what I wanted for my yard and did all of the landscaping myself. Mr. Brown did put the seed on my yard along with one of my good friends. So, that didn't cost him anything.
5. I lived in the residence that I lived in through my marriage until June 2012. I began looking at homes for myself and my two children in the early spring of 2012. My realtor found the builder that I used and I was able to build a home for myself and my two children I picked out a lot and wrote the check to hold the lot. They started the home in May of 2012. I would never buy or build a new home with someone else right after going through a divorce. I was in a bad marriage and my ex was very controlling and told me that I could never do anything on my own. I was so excited and proud of myself for being able to build a brand new home for myself and my children. The thought never even crossed my mind to have Mr Brown's name on my home.
6. As stated above I never had any intention of having Mr. Brown's name on my home. As you can see with the attached paperwork from the home being built and the closing only my name, Robin Thomas, is on any of the papers.

P000339

7. Mr Brown contacted Ada mortgage on his own. He knew that I was using whomever my realtors, Larry and Marilyn Mennetti, told me to use. I have known them for at least 11 years and trust them with my life.

8. Once again I never asked Mr. Brown to put the wood floors in my home. He insisted on doing it no matter how many times I said that I didn't want them. The cables that Mr. Brown put into the home were also his choice. I never asked him to put anything into my home. The TV and the surround sound belonged to me. The conversation that Mr. Brown and I had was: "I don't want the wood floors and if you put them in and something happens between us(we break up) don't expect anything back for them." Mr. Brown's response was, he just laughed and said, "I wouldn't want them back."

9. Again, I never asked Mr. Brown to put in the cables. It was his choice. Mr. Brown had everything that he put in my home at his residence in Grand Rapids, because he had a computer business and kept everything  So, really not sure what expense he incurred.

10. The loan process was never transferred to a new lender. It was always with Mortgage 1.

11. Mr. Brown knew that he was not going to be on the loan for my home. He knew that I was so excited to do this on my own for myself and my children  I was able to get the MCC certificate because i was a first time home owner.

12. It was never my plan for Mr. Brown to be added to my home at any time

13. Mr. Brown paid for his share for living in my home. My mortgage was $1093 per month. Mr. Brown gave me $600 or $650 per month, whatever he felt like. For the money he gave me I paid for half the mortgage, the dish satellite bill, internet, DTE, Consumers, the sewer bill, and all of the food for the home was at my expense. Half of the mortgage would have been $546.50, dish satellite was $88 a month, internet was $44.99 per month, DTE was average $60 per month, consumers was average $100 per month, sewer was $130 every 3 months, food was well over $450 per month. Mr. Brown's totals for the month came to around $961. So, yes he paid $40 a month association dues, my car insurance of $67 per month and our phones which were around $70. I am pretty sure he paid a lot less than he should have. Mr. Brown again put the gutters in without even talking with me about it first. I didn't know that they were being installed until after they were in. Mr. Brown didn't pay for any landscaping. That was at my sole expense.

14. Mr. Brown paid less than half of what he should have for the bills and that includes what he paid for(insurance, association dues and phones).

15. As stated in #3, I had broken up with Mr. Brown of November of 2013 and he refused to leave. So, 3 months later on March 1, 2014 Mr. Brown left. I never refused him entry to gather his belongings. Mr. Brown came by and took a few small items and said he would let me know when he could get the rest. I asked Mr. Brown multiple time to please come get his belongings out of my home and he refused. In June 2014, around father's day, I had to ask 4 of my friends to please come move Mr. Brown's belongings out of my home and into the storage barn that is provided for the neighborhood. Mr. Brown still had a key to the storage barn, he refused to give it back. Then, Mr. Brown still did not come and get his belongings out of the storage barn until August 2014. Mr. Brown did bring a

1. ASSOC DUES
2. CAR INS.
3. PHONE

stove into my home but I do not know if he paid any money for it. Again, it was a gift, I never asked him to purchase a stove. Also, I never had a computer of Mr. Brown's. I had a dell computer that the kids and I used that I still had from my marriage.

16. I sold my home because I planned on moving to Texas for work and then after the home sold I found out that I could not move to Texas with my children. The company that I was working for shut down in April and I still had not found a job by the time the home sold.

17. Mr. Brown never attempted to recover any possession. I asked repeatedly for him to remove his belongings and he refused. I had to ask friends to please move Mr. Brown's things.

Count 1

18. Mr. Brown did those on his own accord. I never wanted or asked him to do any of that work. I never intended for him to have his name on my home.

19. Again, I never wanted his name on my home.

20. Mr. Brown assumed a lot.

21. Never intended for Mr. Brown to put his name on my home.

22. I sold my home thinking that I was moving out of state and to take care of my children.

23. Mr. Brown never wanted anything from my home, items or money, until he found out that it was for sale(over a year after he finally left my home).

24. Not true.

Count 2

25. Mr. Brown had over a year to remove whatever he wanted from my home and not one time did he ask.

26. I do not owe Mr. Brown any money.

Exhibit 14



# Invoice

Blake Seamless Aluminum Gutters
24 Richards NW
Grand Rapids MI 49504

616-560-3653

**Bill To:**
Kelly Brown
9445 Crest Circle Dr
Rockford MI

Blakeeb@hotmail.com

Invoice No:    76
Date:          27 Nov 12

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Seamless aluminum gutters | 73.00 | $3.15 | $229.95** |
| 1x downspouts | 2.00 | $50.00 | $100.00* |
| 2x downspouts | 1.00 | $60.00 | $60.00** |
| 1x downspouts | 1.00 | $70.00 | $70.00** |

*230 pd 12/5 — KB*

*230*
*273*

* Indicates non-taxable item

| | |
|---|---|
| Subtotal | $459.95 |
| Tax (0.00%) | $0.00 |
| Total | $459.95 |
| Paid | $0.00 |
| Balance Due | $459.95 |

Page 1 of 1

BROWN 000171

P000037

Visit us at www.53.com

**KELLEY R. BROWN**
1501 - 36TH ST. SE
GRAND RAPIDS, MI   49508

74-5/724

1114

12/4/2012   Date

Pay to the Order of BLAKE SEEMLESS GUTTERS   $ 230.00

two hundred thirty —————————————— Dollars

**FIFTH THIRD BANK**

For 1/2 NOW 1/2 INV

⑆072400052⑆ 7160844853⑈ 1114

628008943   12-06-2012

| | |
|---|---|
| Posting Date | 2012 Dec 06 |
| DB/CR Indicator | Debit |
| Amount | $230.00 |
| Posting Check Number | 1114 |
| Posting Account Number | 7160844853 |
| Posting Seq Number | 75812518 |
| Tran Code | 1114 |
| ABA/RT Number | 7240005 |

BROWN 000172

PROPOSAL/CONTRACT

# Wright Stump Grinding
# and Tree Removal

15325 Snauble Ave. • Cedar Springs, MI 49319

(616) 291-6559

Customer _KELLEY BROWN_                Date _10-30/2_
_9445 / CREST CIRCLE NE_
_ROCKFORD, MI  49341_

**Wright Stump Grinding** offers to provide the following services:

_COMMON AREA!_

| | | |
|---|---|---|
| Drop Tree(s) | _Roto Tilling_ _and  grass_ | _$ 250_ |
| Chip Brush | | |
| Stump Removal | | |
| Remove Wood | | |
| Complete Job | | |

## 50% down with signature—balance due upon completion

Not responsible for damage to lawns unless specified. Some tree work may be subcontracted and will not apply to this bid. **Wright Stump Grinding** needs to be contracted 5 working days in advance. Bid not honored after 30 days.

If the above terms and conditions are accepted, mail white copy back to **Wright Stump Grinding**.

_10-30-12_

Contract/Owner Signature                Date

BROWN 000174

| CUSTOMER'S ORDER NO. | DEPARTMENT Install | | DATE 10-9-12 |
|---|---|---|---|

NAME Robin Thomas Kelley Brown

ADDRESS 9445 Crest Circle Dr

CITY, STATE, ZIP Rockford MI 49341

| SOLD BY | CASH | C.O.D. | CHARGE | ON. ACCT. | MOSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | |
|---|---|---|---|---|
| 1 | 1 | Weathermate Install | | 2688 | 00 |
| 2 | 1 | Plumbing Installation | | 199 | 00 |
| 3 | | | | 2887 | 00 |
| 4 | | Tax | | 173 | 22 |
| 5 | | | | 3060 | 22 |
| 6 | | $1530" Due April 1st 2013 | | | |
| 7 | | | | | |
| 8 | | Payed half on 10-9-12 | | | |
| 9 | | $1530" | | | |
| 10 | | Check # 1109 | | | |
| 11 | | | | | |
| 12 | | Brandon Adams | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |

RECEIVED BY

adams RDC5605        KEEP THIS SLIP FOR REFERENCE        01-11
BROWN 0001

P000041

KELLEY A. BROWN
1201 - 36TH ST. SE
GRAND RAPIDS, MI  49508

1109

10/10 2012

PAY TO THE
ORDER OF  NICHOLSON'S  SPRINKLERS  $ 1530.11

FIFTH THIRD BANK

FOR  9445  SPRINKLERS

⑆072400052⑆ 716084485 3⑈ 4109

Posting Date 2012 Oct 15 Posting Check Number 1109
Amount $1,530.11

COMERICA
LIVONIA  MI  MI   8462   >072000096<
025397462 10-12-12

Posting Date  2012 Oct 15 Posting Check Number  1109
Amount  $1,530.11

BROWN 000175

B6504405 744 906
616-706-6123

**KELLEY R. BROWN**
1501 - 36TH ST. SE
GRAND RAPIDS, MI 49508

Visit us at www.53.com

74-5/724

**1104**

9/5 2012

Pay to the
Order of  GREEN ROCK  $ 165 36

One sixty five  36/100  Dollars

**FIFTH THIRD BANK**

For: GRASS SEED

⑈072400052⑈ 7160844853⑈ 1104

---

P M:108  B:005  S:0017 00198  >072403554<
COMMERCIAL BANK
ITHACA, MI
>072403554<

S 00198  B 005

FOR DEPOSIT ONLY
GREEN ROCK LANDSCAPE
ENTERPRISES, INC.
0212401251

PAY TO THE ORDER OF
COMMERCIAL BANK

| | |
|---|---|
| Posting Date | 2012 Sep 05 |
| DB/CR Indicator | Debit |
| Amount | $165.36 |
| Posting Check Number | 1104 |
| Posting Account Number | 7160844853 |
| Posting Seq Number | 73730117 |
| Tran Code | 1104 |
| ABA/RT Number | 7240005 |

BROWN 000177

P000043

Visit us at www.53.com

**KELLEY R. BROWN**
1501 - 36TH ST. SE
GRAND RAPIDS, MI 49508

74-5/724

1105

9/6/12

Date

Pay to the
Order of _JASON McCoy_ | $ 300

_Three hundred even_ Dollars

FIFTH THIRD BANK

For _Loan_ 9/6

⑆072400052⑆ 7160844853⑈ 1105

9/6/2012 11:38:35 AM
$300.00
REF #55526036
5/3 5/45 BE#1721

006612 PKT 3
FIFTH THIRD BANK (P270)
◄042000314►
0612048125

| | |
|---|---|
| Posting Date | 2012 Sep 06 |
| DB/CR Indicator | Debit |
| Amount | $300.00 |
| Posting Check Number | 1105 |
| Posting Account Number | 7160844853 |
| Posting Seq Number | 55616405 |
| Tran Code | 1105 |
| ABA/RT Number | 7240005 |

BROWN 000178

Visit us at www.53.com

**KELLEY R. BROWN**
1501 - 36TH ST. SE
GRAND RAPIDS, MI 49508

74-5/724

1099

Date 6/11/2012

Pay to the Order of _Chris Robinson_    $ 5800 00

_fifty - eight hundred even_    Dollars

**FIFTH THIRD BANK**

For _GOOD FLOORING_

⑃072400052⑃ 716084485 3⑃ 1099

JPMorganChaseBank 06 1101 570766 915260042837

| | |
|---|---|
| Posting Date | 2012 Jun 11 |
| DB/CR Indicator | Debit |
| Amount | $5,800.00 |
| Posting Check Number | 1099 |
| Posting Account Number | 7160844853 |
| Posting Seq Number | 79494055 |
| Tran Code | 1099 |
| ABA/RT Number | 7240005 |

BROWN 000180

https://s1flokydciweb02.info53.com/inquiry/page/itemprint.jsp?BEANNAME=ArchiveIte...1/13/2015

**CHICAGO TITLE OF MICHIGAN**
19 N. Monroe, Rockford, MI 49341
Phone: (616)866-0120    Fax: (616)326-2534

## BUYER'S SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| **Date:** | July 8, 2015 | **Time:** | 03:09 PM |
| **Settlement Date:** | July 8, 2015 | **Escrow No.:** | 410675417RCK |
| **Borrower:** | Stacey Robach | **Escrow Officer:** | |
| | 9128 Lady Lauren Drive NE | | |
| | Rockford, MI 49341 | | |
| **Seller:** | Robin L. Thomas | | |
| | 9445 Crest Circle Drive NE | | |
| | Rockford, MI 49341 | | |
| **Property:** | 9445 Crest Circle Drive NE | | |
| | Rockford, MI 49341 | | |

| | DEBIT | CREDIT |
|---|---|---|
| **Financial Consideration** | | |
| Total Consideration | 235,000.00 | |
| Deposit or Earnest money | | 1,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| City/Town Taxes at $1,808.31 | 876.91 | |
|    07/08/15   to   01/01/16 | | |
| Association dues at $40.00 | 30.67 | |
|    07/08/15   to   07/31/15 | | |
| County Taxes at $746.43 | | 384.46 |
|    01/01/15   to   07/08/15 | | |
| | | |
| **Escrow Charges** | | |
| Closing Fee | 250.00 | |
|   Chicago Title of Michigan | | |
| | | |
| **Title Charges** | | |
| Title Insurance | | |
|   Chicago Title Insurance Company | | |
|   ALTA Homeowners (10/17/1998) "Freedom | | |
|   Policy" | | |
| | | |
| **Recording Charges** | | |
| Recording Fees | 17.00 | |
|   Kent County Register of Deeds | | |
| Tax Certification Fee | 5.00 | |
|   Kent County Treasurer | | |
| | | |
| **Other Debits/Credits** | | |
| Administration Fee | 550.00 | |
|   Re/Max United | | |
| **Subtotals** | 236,729.58 | 1,384.46 |
| **Balance Due FROM Borrower** | . | 235,345.12 |
| **TOTALS** | 236,729.58 | 236,729.58 |

Borrower

*Stacey J Robach*
Stacey Robach

CHICAGO TITLE OF MICHIGAN, INC.
Settlement Agent

P000311

**CHICAGO TITLE OF MICHIGAN**
19 N. Monroe, Rockford, MI 49341
Phone: (616)866-0120   Fax: (616)326-2534

## SELLER'S SETTLEMENT STATEMENT

| | |
|---|---|
| Date: July 8, 2015 | Time: 03:09·PM |
| Settlement Date: July 8, 2015 | Escrow No.: 410675417RCK |
| Borrower: Stacey Robach | Escrow Officer: |
| 9128 Lady Lauren Drive NE | |
| Rockford, MI 49341 | |
| Seller: Robin L. Thomas | |
| 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |
| Property: 9445 Crest Circle Drive NE | |
| Rockford, MI 49341 | |

| | DEBIT | CREDIT |
|---|---|---|
| **Financial Consideration** | | |
| Total Consideration | | 235,000.00 |
| Dep. retained ($1,000.00) | 1,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| City/Town Taxes at $1,808.31 | | 876.91 |
| 07/08/15    to    01/01/16 | | |
| Association dues at $40.00 | | 30.67 |
| 07/08/15    to    07/31/15 | | |
| County Taxes at $746.43 | 384.46 | |
| 01/01/15    to    07/08/15 | | |
| | | |
| **Commissions** | | |
| Listing Broker's Commission to Five Star Real | | |
| Estate 235,000.00 @ 3.00% = 7,050.00 | | |
| Selling Broker's Commission to Re/Max | 13,100.00 | |
| United 235,000.00 @ 3.00% = 7,050.00 | | |
| | | |
| **Escrow Charges** | | |
| Closing Fee | 250.00 | |
| Chicago Title of Michigan | | |
| | | |
| **Title Charges** | | |
| Title Insurance | 1,332.18 | |
| Chicago Title Insurance Company | | |
| ALTA Homeowners (10/17/1998) "Freedom | | |
| Policy" | | |
| | | |
| **Recording Charges** | | |
| City/County Tax/Stamps | 258 50 | |
| Kent County Register of Deeds | | |
| State Tax/Stamps | 1,762 50 | |
| Kent County Register of Deeds | | |
| | | |
| **Payoffs** | | |
| PennyMac Loan Services | | |
| Total Payoff | | 157,260.19 |
| Loan Payoff       156,745.63 | | |
| Per Diem @ 16.080000 | | |
| Additional Interest (From 06/17/15       514.56 | | |
| Through 07/18/15) | | |
| | | |
| | | |
| **Other Debits/Credits** | | |
| Well Inspection       INV# 15-06-023 | 225.00 | |
| Kathleen Hill, R.S. LLC | | |
| Administration Fee | 245.00 | |
| Five Star Real Estate | | |
| 2015 Summer Taxes       41-07-27-420-017 | 1,808.31 | |
| Courtland Township Treasurer | | |

P000312

SELLER'S SETTLEMENT STATEMENT – Continued

|  | DEBIT | CREDIT |
|---|---|---|
| July condo Dues<br>TBD | 40.00 |  |
| **Subtotals** | 177,666.14 | 235,907.58 |
| **Balance Due TO Seller** | 58,241.44 |  |
| **TOTALS** | 235,907.58 | 235,907.58 |

Seller

Robin L. Thomas

CHICAGO TITLE OF MICHIGAN, INC.
Settlement Agent

P000313

Exhibit 15

**From:** "Robin Thomas" <fromille@yahoo.com>
**To:** kelleybrown1@comcast.net
**Sent:** Sunday, March 25, 2012 4:36:55 PM
**Subject:** us

I love you more than I ever thought possible to love another person. (except the love a mother has for her children) But, you know what I mean. I have never had that significant other that I wanted to share everything with or was comfortable telling everything to, until I met you. You make me feel comfortable and able to say how I feel. I love everything about you.

I know you have a past and I know that I say things about it. I am sorry. Deep down I don't really care what you did before me, I just think about things too much and get myself upset. But, when I do, you get a little defensive and that is why I wonder if this is really what you want. I have told you that when I start to act like that just shut me up with a kiss or something, don't get mad.

I told you from the beginning I would help with the boat. I got upset today because you seem like you don't want my help and all of a sudden it is something you want to do by yourself....that is such a lie. I know you need and want help. It would get done faster with help. I may not be a big strong guy but I can do a lot!! The sooner it is done, the sooner we can all have fun together!!

I want to be with you and share everything together as a family. I thought that is what you wanted also. But, I don't think you do anymore. I want all of you, not just a little here and there. I want us to do these things together that couples do together. I want you to always be honest with me and not keep things from me. If you cannot do this, then it isn't going to work. I need to know that you still want all of this just like I do. I don't "need" you here....I "WANT" you here!! You say how much you love me, all the time, but, your attitude says otherwise....

Exhibit 16

**Me:** (KELLEY)

Mar 2, 2014 1:21:08 PM

I am getting all my possessions...you kicked me out

**6169705719:** (ROBIN)

< STOVE >                                    Mar 2, 2014 1:19:04 PM

You bought it for the house. You don't have any where to put it

**Me:** (KELLEY)

Mar 2, 2014 1:18:15 PM

It is mine and I want all my stuff...

**6169705719:**

< STOVE >  Mar 2, 2014 1:16:37 PM

You didn't pay $2000 for that!! You don't care about us at all...all you care about is money

**Me:**

Mar 2, 2014 1:15:10 PM

That's a $2000 Stove I'm not giving my stuff away. ..i'm going to police now...

**6169705719:**

Mar 2, 2014 1:11:55 PM

Wow...you would really do that!!?? So, I cannot make food for the kids!!

Me:

From: kelleybrown1@comcast.net
To: "Fromille, Robin" <fromille@yahoo.com>
Date: June 27, 2014 at 1:31 PM
Subject: My Property

Robin-

I want to know why you are holding out on my stuff.

Missing:

1.  Kegerator that you bought me for my birthday
2. 1 Desk in basement behind furnace
3. Keurig Coffee Maker
4. Rug from living room
5. Trampoline
6. Stove
7. Gateway Computer

Please let me know when / how I can get these things.

_____

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123

From: Robin Thomas <fromille@yahoo.com>
To: "kelleybrown1@comcast.net" <kelleybrown1@comcast.net>
Date: June 28, 2014 at 9:45 AM
Subject: Re: Dog Gates

Good for you!! I don't have anything of yours at my home!!

Sent from Yahoo Mail on Android

---

**From:** kelleybrown1@comcast.net <kelleybrown1@comcast.net>;
**To:** Fromille, Robin <fromille@yahoo.com>;
**Subject:** Re: Dog Gates
**Sent:** Sat, Jun 28, 2014 1:40:31 PM

I will leave you alone after I get all my stuff!  Why is this so hard to figure out??  I have moved forward and I am actively dating and meeting new people and trying to get Grace and my life back!

---

**From:** "Fromille, Robin" <fromille@yahoo.com>
**To:** "brown, kelley" <kelleybrown1@comcast.net>
**Sent:** Saturday, June 28, 2014 9:00:26 AM
**Subject:** Re: Dog Gates

Not sure what 8. Is? Please leave me alone!!

Sent from Yahoo Mail on Android

---

**From:** kelleybrown1@comcast.net <kelleybrown1@comcast.net>;
**To:** Fromille, Robin <fromille@yahoo.com>;
**Subject:** Dog Gates
**Sent:** Sat, Jun 28, 2014 12:31:27 PM

8. I did not see me dog gates either.

Please let me know when I can get all my things or put them in the red barn.

---

Kelley Brown
kelleybrown@comcast.net
(616) 706-6123